REVISED DECEMBER 18, 2008

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 9, 2008

Charles R. Fulbruge III
Clerk

No. 08-30055

In the Matter of:  OCA, INC.; OCA OUTSOURCE, INC.

Debtors

----------------------------------------------------

BRIAN A. BEITEL, D.D.S.

Appellant

v.

OCA, INC.; OCA OUTSOURCE, INC.

Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, HIGGINBOTHAM, and WIENER, Circuit Judges.

JACQUES L. WIENER, JR., Circuit Judge:

Appellant Dr. Brian Beitel appeals the district court's order affirming the bankruptcy court's denial of his motion to set aside or to vacate the default judgment against him.  Concluding that the bankruptcy court erred by employing the incorrect burden of proof, we vacate both the bankruptcy court's denial of Dr. Beitel's motion to set aside or to vacate the default judgment and

the district court's order, and remand to the bankruptcy court to conduct a de novo evidentiary hearing.

## I. FACTS AND PROCEEDINGS

This appeal arises from an adversary proceeding in the Chapter 11 bankruptcy of appellee OCA, Inc. and its subsidiaries, including appellee OCA Outsource, Inc. (collectively, "OCA"). In 2004, Dr. Beitel, a solo pediatric dental practitioner, entered into an "outsource agreement" with OCA. In this agreement, OCA agreed to provide specified business and administrative services to Dr. Beitel's practice in exchange for a monthly service fee. On the same day that he signed the outsource agreement, Dr. Beitel signed two promissory notes payable to OCA which permitted him to obtain loans aggregating up to $500,000. By late 2005, Dr. Beitel had stopped paying OCA the monthly service fees as they became due and had defaulted on the promissory notes.

Having previously filed a petition voluntarily commencing Chapter 11 bankruptcy proceedings, OCA initiated the instant adversary proceeding on August 28, 2006 by filing a complaint against Dr. Beitel. In it, OCA sought to recover for, inter alia, Dr. Beitel's breach of the outsource agreement and default on the promissory notes.

On August 30, 2006, OCA served Dr. Beitel with copies of the summons and complaint via first-class U.S. mail, as permitted by Federal Rule of Bankruptcy Procedure 7004, addressed to both his home and office. Dr. Beitel denies receiving either of these mailings.

On February 27, 2007, the bankruptcy court consolidated this adversary proceeding with approximately one hundred other OCA adversary proceedings. The court specified that these proceedings would be tried in blocks and permitted OCA to schedule which adversary proceedings would be tried in which blocks. OCA included its proceeding against Dr. Beitel in its Proposed June

Trial Schedule as one of ten cases for the second round of trials scheduled for June 12–29, 2007. OCA mailed this schedule to Dr. Beitel, and he admits receiving it,[1] but insists that this was the first time that he had received notice of any action against him by OCA.

Dr. Beitel then contacted his attorney, Clement Cartron, who on May 23, 2007, spoke with OCA's counsel, Marguerite Kingsmill. Cartron asserts that Kingsmill told him that the adversary proceeding against Dr. Beitel would not be called until the last week of the June round of trials. Cartron also asked to be sent a copy of the summons and complaint. One week later, on May 30, 2007, OCA e-mailed copies of the summons and complaint to Cartron.

As Cartron is a general practitioner without significant bankruptcy experience, he encouraged Dr. Beitel to seek special bankruptcy counsel. In response, Dr. Beitel contacted Michael Lee, a bankruptcy practitioner, to discuss representation. On June 11 or 12, 2007, Lee contacted a different OCA attorney, Drew Ballina. Lee recalls that Ballina told him specifically that no default would be taken against Dr. Beitel and that the merits would be addressed after Dr. Beitel filed an answer. Ballina claims, however, that he told Lee that trial would occur according to the Proposed June Trial Schedule. Ballina also claims that Lee told him that Dr. Beitel had not yet officially retained him as counsel.

On June 13, 2007, OCA filed a proposed pretrial order in which the instant adversary proceeding was "scheduled to commence on June 18, 2007"; however, the bankruptcy judge called the adversary proceeding against Dr. Beitel for trial on the same day that the proposed schedule was filed, June 13, 2007. Neither Dr. Beitel nor his counsel appeared. When the bankruptcy judge inquired whether Dr. Beitel had filed an answer, OCA's counsel responded that none had been filed; he did not, however, volunteer the fact that Lee had just contacted

---

[1] The schedule was mis-addressed: The mailing address displayed on the envelope was one digit off from Dr. Beitel's actual mailing address.

Ballina. Unaware of the negotiations between opposing counsel, the bankruptcy court proceeded to hear the case. OCA called one witness, its chief restructuring officer, who testified regarding the pertinent contracts and the amounts due under these agreements. The bankruptcy court granted OCA a default judgment in the amount sought and requested that OCA prepare and submit a proposed judgment.

A week later, Dr. Beitel filed his original answer to OCA's complaint. Although his answer is dated June 18, 2007, it was not filed until June 22. Dr. Beitel filed an amended answer three days later. On that same day, June 25, 2007, the bankruptcy court entered OCA's proposed default judgment against Dr. Beitel in the amount of $668,153 plus costs and interest.

On July 3, 2007, Dr. Beitel filed a motion to set aside or to vacate the June 25 default judgment. Dr. Beitel asserted that: (1) he was never served with the complaint pursuant to Federal Rule of Bankruptcy Procedure 7004; (2) he first learned of the existence of an action against him by way of the Proposed June Trial Schedule; (3) he was misled by OCA in telephone communications just prior to trial regarding the status of his adversary proceeding; and (4) he had a meritorious defense to OCA's claim. OCA opposed Dr. Beitel's motion to vacate.

On August 1, 2007, the bankruptcy court held a hearing on the motion and ruled in OCA's favor. Recognizing that OCA was entitled to a presumption of valid service, the bankruptcy court ruled that Dr. Beitel had failed to rebut this presumption by clear and convincing evidence. Specifically, the bankruptcy court stated:

> I'm convinced that Dr. Beitel simply ignored several — ignored the service of the complaint and the summons and that you have not carried — he has not carried the burden of overcoming the presumption of valid service that attaches to the two Certificates of Service, one of which shows that service was made at his home by mailing on August 30 an envelope that was duly stamped and

correctly addressed, and another that was mailed to his correct office address also on August 30.

. . . .

On the basis of [the] case law and on the basis of the two certificates [of service] I hold that Dr. Beitel has not overcome the presumption that proper service was made of both the complaint and the summons. In addition, there is evidence, uncontroverted evidence that many other things were mailed to these same two addresses and that they were not returned and there's no complaint about there [sic] not having been received. To the contrary, you admit that he received a number of things at these addresses. The one instance in which something was misaddressed was acknowledged to be received by him.

So, every presumption in this case shows that Dr. Beitel knew of the complaint, knew of the summons, and knew of the trial date, and that he simply failed to react in time and did not file the pleadings or make an appearance at the trial until after the trial was held on June 13, 2007, which resulted in the judgment against him that I refuse to set aside. (emphasis added).

Dr. Beitel timely appealed the bankruptcy court's denial of the motion to vacate to the district court where, for the first time, he challenged the bankruptcy court's exercise of core jurisdiction. The district court affirmed the bankruptcy court, holding that it had acted within its statutory authority in entering the default judgment. The district court held that, even though this adversary proceeding was non-core, Dr. Beitel had impliedly consented to the bankruptcy court's entry of final judgment by failing to object to its assumption of core jurisdiction. The district court then reviewed the bankruptcy court's denial of the motion to vacate for abuse of discretion, concluding that there was no "reason to disturb the bankruptcy court's finding that Beitel received service of OCA's complaint and notice of the trial schedule for his adversary proceeding and elected not [to] respond." Describing Dr. Beitel's inaction prior to the trial date as "emblematic of the very behavior that the Fifth Circuit has found to constitute willful default," the district court concluded that the bankruptcy court

did not abuse its discretion in denying the motion to vacate. This timely appeal followed.

## II. ANALYSIS

### A. Standards of Review

"This Court reviews the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court."[2] We thus generally review factual findings for clear error and conclusions of law de novo.[3]

Subject-matter jurisdiction is a question of law which we review de novo.[4] We review a determination that a "default should not be set aside . . . for abuse of discretion."[5] "Because of the seriousness of a default judgment, . . . even a slight abuse of discretion may justify reversal."[6] If "a district court's findings rest on an erroneous view of the law, they may be set aside on that basis."[7] Although we review a decision to set aside a default judgment for abuse of

---

[2] Wooley v. Faulkner (In re SI Restructuring, Inc.), 542 F.3d 131, 134–35 (5th Cir. 2008).

[3] Id. at 135.

[4] Edge Petrol. Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case), 483 F.3d 292, 298 (5th Cir. 2007).

[5] Dierschke v. O'Cheskey (In re Dierschke), 975 F.2d 181, 184 (5th Cir. 1992).

[6] Lacy v. Sitel Corp., 227 F.3d 290, 292 (5th Cir. 2000) (citation omitted); see United States v. One Parcel of Real Property, 763 F.2d 181, 183 (5th Cir. 1985) ("[B]ecause modern federal procedure favors trials on the merits, an abuse of discretion need not be glaring to justify reversal." (citation and internal quotation marks omitted)).

[7] Pullman-Standard v. Swint, 456 U.S. 273, 287 (1982); see Steering Comm. v. Exxon Mobil Corp., 461 F.3d 598, 601 (5th Cir. 2006) ("Because, however, a court by definition abuses its discretion when it applies an incorrect legal standard, we review such errors de novo.").

discretion, whether a defendant's failure to answer was willful is a factual determination that we review for clear error.[8]

## B.    Bankruptcy Court's Adjudicative Authority

As a threshold matter, we  consider Dr. Beitel's assertion — one that he made for the first time on appeal to the district court — that the bankruptcy court was without power to enter the default judgment against him.  We must determine, in a two-step inquiry, (1) whether the bankruptcy court had subject-matter jurisdiction, and, if we find that it did, (2) the extent of that court's judicial power.  Bankruptcy courts have jurisdiction over, inter alia, civil cases "related to" Chapter 11 bankruptcy cases.[9]  A proceeding is related to the main case if "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"[10]  The instant case obviously could have an affect on the bankruptcy estate because a judgment against Dr. Beitel could increase the estate.  The bankruptcy court thus had subject-matter jurisdiction over the instant adversary proceeding.

---

[8]  CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992); see In re Dierschke, 975 F.2d at 184.

[9]  Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.), 118 F.3d 1056, 1062 n.12 (5th Cir. 1997) (quoting 28 U.S.C. § 1334(b)).

[10]  Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis in original); see Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 752 (5th Cir. 1995) ("[W]hen we define 'related to' jurisdiction, we should avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate." (citation and internal quotation marks omitted)).  This standard applies as long as the bankruptcy case continues; after confirmation of a reorganization plan, a stricter post-confirmation standard applies.  See Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.), 266 F.3d 388, 390–91 (5th Cir. 2001) (explaining this distinction).  Yet, once the bankruptcy court has jurisdiction, confirmation does not divest the court of its jurisdiction.  Newby v. Enron Corp. (In re Enron Corp. Secs.), 535 F.3d 325, 335 (5th Cir. 2008).  In the instant case, OCA instituted its adversary proceeding against Dr. Beitel several months before the bankruptcy court's January 2007 confirmation of OCA's reorganization plan.  The "related to" standard thus applies.

A bankruptcy court's adjudicative authority is constrained, however, if the proceeding is non-core. Bankruptcy courts have full adjudicative power over core proceedings; in non-core proceedings they are restricted to issuing proposed findings of fact and conclusions of law, which the district court may adopt or reject.[11] A non-exhaustive list of "core proceedings" appears in 28 U.S.C. § 157(b)(2). In In re Wood, "Judge Wisdom distilled the formula for [core proceedings] thus: 'We hold . . . that a proceeding is core under section 157 if it invokes the substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'"[12] We agree with both Dr. Beitel and the district court that this proceeding is non-core. As in In re Wood, the instant claim is "not based on any right created by the federal bankruptcy law," but instead is "simply a state contract action that, had there been no bankruptcy, could have proceeded in state court."[13] OCA's attempts to classify its adversary proceeding as specific to bankruptcy fail.

Even though this is a non-core proceeding, we nevertheless conclude that the bankruptcy court exercised its adjudicative power appropriately because Dr. Beitel impliedly consented to the bankruptcy court's entry of final orders and judgments. In a non-core proceeding, the parties may consent to have a bankruptcy court "enter appropriate orders and judgments."[14] Such consent may be express or implied.[15] Failure to object in the bankruptcy court may constitute

---

[11] In re Wood, 825 F.2d at 95.

[12] Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.), 163 F.3d 925, 930 (5th Cir. 1999) (quoting In re Wood, 825 F.2d at 97).

[13] In re Wood, 825 F.2d at 97. We are mindful, however, of the fact that the mere presence of a suit "based on state created rights" is not, alone, dispositive. See id. at 97 & n.34 (citing 28 U.S.C. § 157 (b)(3)).

[14] 28 U.S.C. § 157(c)(2).

[15] M.A. Baheth & Co. v. Schott (In re M.A. Baheth Constr. Co.), 118 F.3d 1082, 1084 (5th Cir. 1997).

implied consent.[16] Even if we ignore any opportunity that Dr. Beitel might have had to challenge the bankruptcy court's adjudicative authority prior to its entry of default judgment, his post-default conduct was entirely inconsistent with raising such a challenge. When Dr. Beitel sought to set aside the default judgment in the bankruptcy court, he never once raised the core/non-core issue, and even filed an answer admitting to the complaint's allegation that "[t]his matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)."

Dr. Beitel mounts a two-pronged challenge regarding his implied consent. First, he contends that only the bankruptcy court, not the district court sitting as an appellate court, may determine consent, a fact issue. The case cited by Dr. Beitel for this proposition, however, does not go that far, stating only that "consent to . . . jurisdiction is not lightly to be inferred" and requires a "clear manifestation by the adverse party."[17] This language does not lend support to Dr. Beitel's contention: It neither indicates that only the bankruptcy court may make determinations as to consent nor causes us to question whether Dr. Beitel consented in this case.

Dr. Beitel contends alternatively that his post-default conduct is irrelevant.[18] On this point, Dr. Beitel misinterprets our precedent: A defendant may lose the opportunity to object after a relevant hearing, but a defendant does not possess free license not to object after a hearing.[19] This is particularly true in the default-judgment context, in which a defendant may not have had an opportunity to object previously. To hold otherwise would only create needless

---

[16] McFarland v. Leyh (In re Tex. Gen. Petrol. Corp.), 52 F.3d 1330, 1337 (5th Cir. 1995).

[17] Gill v. Phillips, 337 F.2d 258, 262–63 (5th Cir. 1964).

[18] See In re Tex. Gen. Petrol., 52 F.3d at 1337 (finding implied consent where defendant failed to object to the bankruptcy-court's jurisdiction before or during a relevant hearing).

[19] See id. ("By failing to object in the bankruptcy court, [the defendant] consented impliedly to the court's assumption of core jurisdiction.").

9

appellate litigation by encouraging defendants like Dr. Beitel to wait until appeal to object to the bankruptcy court's jurisdiction.

We agree with the district court's observation that Dr. Beitel's objection to the bankruptcy court's jurisdiction at this stage of the proceeding "more closely resembles an afterthought than a bona fide objection."[20]  The bankruptcy court had both subject-matter jurisdiction over the instant case and authority to enter final orders and judgments.

## C.    Setting Aside the Default Judgment

### 1.    Legal Standard

Federal Rule of Civil Procedure 55 applies in adversary proceedings.[21]  The former version of Rule 55(c), which applies here, states that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."[22]  Because the bankruptcy court entered a judgment on Dr. Beitel's default,[23] Rule

---

[20]  Id. at 1337 (citation omitted).

[21]  FED. R. BANKR. P. 7055.

[22]  FED. R. CIV. P. 55(c) (amended 2007).  We give amendments to the Federal Rules of Civil Procedure "retroactive application to the maximum extent possible."  Long v. Simmons, 77 F.3d 878, 879 (5th Cir. 1996) (citation and internal quotation marks omitted); see Reeves v. Collins, 27 F.3d 174, 177 (5th Cir. 1994) (per curiam) (noting that we "will apply retroactively the new [procedural] rules when it is just to do so").  We conclude in this case, however, that the amendment cannot be applied retroactively.  Dr. Beitel filed his motion to vacate the default judgment on July 3, 2007, the bankruptcy court denied that motion on August 1, 2007, and the amended Rule 55(c) did not become effective until December 1, 2007.  It would thus be unjust — and would defy logic — to evaluate the bankruptcy court's decision and district court's review for abuse of discretion under a rule setting forth the applicable legal standard that was not in effect at the time Dr. Beitel initially sought relief.
    Although we did not specifically reference Rule 55(c) in our recent opinion in Jenkens & Gilchrist v. Groia & Co., 542 F.3d 114 (5th Cir. 2008), our decision there issued under similar circumstances: the defendants originally sought to vacate the default judgment in February 2007, before the amended Rule 55(c) took effect.

[23]  The bankruptcy court characterized its ruling as one of default judgment and considered Dr. Beitel's motion as one to vacate or set aside a default judgment.  Additionally, the bankruptcy court entered judgment on the merits in the absence of Dr. Beitel or his

60(b) applies. This rule allows a court to grant relief from a final judgment under any of six provisions, including "mistake, inadvertence, surprise, or excusable neglect[.]"[24] In assessing a motion to vacate a default judgment, we have interpreted Rule 60(b)(1) as incorporating the Rule 55 "good-cause" standard applicable to entries of default:

> In determining whether good cause exists to set aside a default judgment under Rule 60(b)(1) we examine the following factors: whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. Courts may also consider whether the public interest was implicated, whether there was significant financial loss to the defendant, and whether the defendant acted expeditiously to correct the default. The district court need not consider all of the above factors in ruling on a defendant's 60(b)(1) motion; the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of "good cause."[25]

This inquiry follows a recognition in our previous holdings that "courts apply essentially the same standard to motions to set aside a default and a judgment by default."[26] Yet, we have also stated that "the former is more readily granted than a motion to set aside a default judgment."[27] On multiple occasions, we have declined to decide whether the "good-cause standard is equivalent to the standard applied to relief from default judgment under Rule 60(b)."[28] Although

---

counsel. We thus consider Dr. Beitel as seeking relief from default judgment, not from an entry of default.

[24] FED. R. CIV. P. 60(b)(1).

[25] Jenkens & Gilchrist, 542 F.3d at 119 (emphasis added) (internal citations and quotation marks omitted).

[26] Dierschke v. O'Cheskey (In re Dierschke), 975 F.2d 181, 184 (5th Cir. 1992) (emphasis added).

[27] Id.

[28] Id. at 184–85 n.16 (citing Fed. Sav. & Loan Ins. Corp. v. Kroenke, 858 F.2d 1067, 1069 (5th Cir. 1988)). We have noted, however that other courts have reached seemingly

the recent revision to Rule 55(c) may one day cause us to reassess the relationship between the Rule 55(c) good-cause standard and Rule 60(b)(1),[29] we have no occasion to do so in the instant case and instead conduct our inquiry in accordance with our recent decision in Jenkens & Gilchrist.[30] In any event, conflation of the applicable standards in this case would be harmless because we have held that willful default, the key factor in the instant case, "would certainly not constitute excusable neglect," one of the Rule 60(b)(1) factors.[31]

Of the relevant factors, two have particular significance here, viz., (1) the defendant's default was willful;[32] or (2) the defendant failed "to present a meritorious defense sufficient to support a finding on the merits for the defaulting party."[33] If a district court (or a bankruptcy court) makes either

---

contrary conclusions. For example, in Kroenke, we noted that the Sixth Circuit had held that the "good-cause" standard applies to motions to set aside default judgments, which we found to be a "reasonable interpretation" of Rule 55(c). 858 F.2d at 1069. We also recognized that several courts, including the Second Circuit, had held that the "good-cause" standard for entry-of-default cases is more liberal than the standard in default-judgment cases. Id.

[29] The version of Rule 55(c) effective from August 1, 1987 until December 1, 2007 — and in the instant case — stated: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." (emphasis added). In dicta, we stated that the word "likewise" made it "certainly reasonable" to interpret "good cause" as applying to the Rule 60(b) default-judgment context. Kroenke, 858 F.2d at 1069.

The 2007 amendment to Rule 55(c), which the Advisory Committee "intended to be stylistic only," see FED. R. CIV. P. 55 (Supp. Note), may alter this analysis. The revision says: "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." FED. R. CIV. P. 55(c). By deleting the word "likewise," the current version may confirm that the "good-cause" standard applicable to entries of default does not apply to default-judgment cases.

[30] Today, we must apply the prior version of Rule 55(c).

[31] See CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992).

[32] A willful default is an "intentional failure" to respond to litigation. Lacy v. Sitel Corp., 227 F.3d 290, 292 (5th Cir. 2000) (quoting In re Dierschke, 975 F.2d at 184).

[33] Jenkens & Gilchrist, 542 F.3d at 119–20 (citation and internal quotation marks omitted).

finding, we may hold that it was within its discretion in refusing to grant relief from a default judgment.[34]  Still, "Rule 60(b) is applied most liberally to judgments of default, since trial on the merits is to be favored over such a truncated proceeding.  Unless it appears that no injustice results from the default, relief should be granted."[35]  In light of the general disfavor of default judgments, "where there are no intervening equities any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits."[36]

2.    Rulings of the Bankruptcy Court

In the bankruptcy court, Dr. Beitel urged that (1) OCA never effected service and (2) his default was not willful, but was caused both by OCA's misrepresentations to him and by its purposeful non-disclosure to the bankruptcy court of key information regarding recent communications between Dr. Beitel's counsel and counsel for OCA.

The bankruptcy court determined that Dr. Beitel had submitted no evidence that would overcome the presumption of valid service.  On this point, Dr. Beitel had a heavy burden: "Mail that is properly addressed, stamped and deposited into the mails is presumed to be received by the addressee.  The presumption can only be overcome by clear and convincing evidence that the mailing was not, in fact, accomplished."[37]  The bankruptcy court correctly applied

---

[34]  Id.

[35]  Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890, 895 (5th Cir. 1984) (internal citation omitted); see also Ruiz v. Quarterman, 504 F.3d 523, 532 (5th Cir. 2007) ("[T]his lesser standard of review has been applied most liberally to motions to re-open default judgments[.]").

[36]  Lacy, 227 F.3d at 292 (citation omitted).

[37]  United States v. Levoy, (In re Levoy), 182 B.R. 827, 834–35 (B.A.P. 9th Cir. 1995) (citing Moody v. Bucknum (In re Bucknum), 951 F.2d 204, 207 (9th Cir. 1991)) (emphasis added); see also Ruch v. Cerrone & Assocs., Inc. (In re Cerrone & Assocs.), Inc., 72 F.3d 126 (table), 1995 WL 747586, at *1 (4th Cir. 1995) (per curiam) (unpublished) (setting forth the

the clear-and-convincing-evidence standard, and Dr. Beitel offers no competent evidence that causes us to question the court's conclusion.[38]

The bankruptcy court's determination of willfulness, however, is problematic. Just before the court issued its ruling, the following exchange occurred:

[Dr. Beitel's Counsel]:
> Well, then why did not [OCA counsel] say to me that [Dr. Beitel] would be up second, or third up, or fourth, or why didn't [other OCA counsel] tell [Dr. Beitel's counsel] that [Dr. Beitel] would be second up or third up?[39]

The Court:
> I don't know that. That's again . . . weighing he said, she said, and that's not sufficient to overcome the presumption of valid service or to show by clear and convincing evidence. If the Court has to weigh two conflicting statements, that's not clear and convincing evidence.

This exchange unquestionably addressed whether Dr. Beitel's default was willful, not whether the presumption of valid service was overcome. The bankruptcy court then immediately announced its ruling:

> I'm convinced that Dr. Beitel simply ignored several — ignored the service of the complaint and the summons and that you have not carried — he has not carried the burden of overcoming the presumption of valid service . . . [and] every presumption in this case shows that Dr. Beitel knew of the complaint, knew of the summons, and knew of the trial date, and that he simply failed to react in time

---

same presumption that may only be overcome by clear and convincing evidence); Mulder v. C.I.R., 855 F.2d 208, 212 (5th Cir. 1988) ("[I]t is presumed that a properly-addressed piece of mail placed in the care of the Postal Service has been delivered[.]").

[38] Likewise, the district court, acting in its appellate capacity, did "not find any reason to disturb the . . . finding that Beitel received service of OCA's complaint . . . ."

[39] In other words, Dr. Beitel's counsel was asking the bankruptcy court, "How could Dr. Beitel have willfully defaulted if he maintained contact with OCA and had no indication that the instant proceeding would be called for trial?"

and did not file the pleadings or make an appearance at the trial until after the trial was held on June 13, 2007, which resulted in the judgment against him that I refuse to set aside. (emphasis added).

The bankruptcy court's refusal to weigh what it called "he said, she said" evidence and its subsequent conclusions demonstrate that the court applied the incorrect burden of proof — clear and convincing evidence — to create a presumption of willfulness; yet, the presumption properly applies only to the valid-service component of a court's inquiry. If courts were to require clear and convincing evidence to overcome a putative willfulness presumption, the instruction to apply Rule 60(b) "most liberally" when considering whether to vacate a default judgment would be rendered meaningless.[40] Instead, trial courts must apply only the preponderance-of-the-evidence standard when assessing willfulness.[41] Under this less demanding burden of proof, the bankruptcy court had no choice but to inject itself into a murky "he said, she said" dispute before making its factual determination that Dr. Beitel "simply ignored" the complaint and summons, i.e., that he willfully did so. Such credibility determinations are often the very essence of making a finding by a preponderance of the evidence.[42]

---

[40] See Peter Scalamandre & Sons, Inc. v. Kaufman, 113 F.3d 556, 564 (5th Cir. 1997) (classifying "clear and convincing evidence" as a "difficult burden."); see also United States v. Valenzuela-Puentes, 479 F.3d 1220, 1228 (10th Cir. 2007) ("[T]he Supreme Court has made clear that [a party] establishes a fact by clear and convincing evidence only if the evidence 'place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'") (first and second modifications added) (quoting Colorado v. New Mexico, 467 U.S. 310, 316 (1984)).

[41] See, e.g., EPA v. Sequa Corp. (In re Bell Petrol. Servs., Inc.), 3 F.3d 889, 909–10 & n.2 (5th Cir. 1993) (Parker, D.J., sitting by designation, concurring in part and dissenting in part) (referring to the preponderance-of-the-evidence standard as the "fundamental civil case standard" and defining it as "[e]vidence by 'fifty-one percent,' or to the extent of 'more likely than not'").

[42] Although not necessary to our decision today, we note that it is doubtful, even under the clear-and-convincing-evidence standard, that courts have the luxury of ignoring all issues that turn on "he said, she said" evidence. It is conceivable that this type of evidence could be

The bankruptcy court was required to make a factual determination regarding what contact was made between Dr. Beitel and OCA prior to the entry of the default judgment and what, if any, assurances OCA's counsel had given. If the court had determined that OCA represented to Dr. Beitel that no default would be taken against him and that he would be permitted to file an answer and have his case decided on the merits, then a willfulness finding would likely be clearly erroneous. If, on the other hand, the court had determined that OCA never made any such representations, a finding of willfulness would likely have withstood our deferential review. But, in the absence of a factual finding by the bankruptcy court after applying the correct burden of proof, we owe the bankruptcy court's conclusion no deference.

The district court sitting in an appellate capacity was in no better position than are we to affirm a willfulness finding by the bankruptcy court based on the erroneous burden of proof.[43] We cannot defer to the district court's conclusion that "the bankruptcy court did not abuse its discretion in concluding that Beitel's failure to respond was intentional" because the decision was based on deference to the bankruptcy court's holding, a deference that it was not due.

We thus must disregard the bankruptcy court's willfulness finding, apparently the only one (other than Dr. Beitel's failure to overcome the presumption of proof of service) that the bankruptcy court made in support of its holding. This conclusion, however, does not end our inquiry. Before we may

---

highly relevant to whether a party meets the stricter evidentiary burden.

[43] See 28 U.S.C. § 158(c)(2) (indicating that in bankruptcy cases district courts hear appeals "in the same manner as appeals in civil proceedings generally taken to the courts of appeals from the district courts").

reverse the bankruptcy court's entry of default judgment, we must also "ask whether the record could support a finding in [Dr. Beitel's] favor."[44]

### 3. Support for Setting Aside the Default Judgment

In ruling on a Rule 60(b) motion, courts are not required to state findings or conclusions.[45] Therefore, in the absence of such an optional statement, a remand for specific findings "is not necessary if 'the record would not support' a finding in the appellant's favor, and if such a finding would be deemed clearly erroneous had it been made."[46]

We first address whether Dr. Beitel has presented a meritorious defense, as a refusal to set aside a default judgment is proper in the absence of such a defense.[47] In determining whether a meritorious defense exists, "'[t]he underlying concern is . . . whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'"[48] On careful review, we cannot say that the record could not support a finding that Dr. Beitel has a meritorious defense. Dr. Beitel submitted an affidavit that he borrowed only $290,000 from OCA — not the more than $600,000 that OCA alleges — and his office manager submitted an affidavit with similar assertions.

---

[44] Jenkens & Gilchrist v. Groia & Co., 542 F.3d 114, 119 (5th Cir. 2008) (emphasis added).

[45] Id. at 118 (citing FED. R. CIV. P. 52(a)(3)).

[46] Id. at 119 (citing Kratzer v. Capital Marine Supply, Inc., 645 F.2d 477, 483 (5th Cir. 1981)). Of course, an erroneous finding or conclusion is distinct from an omitted finding or conclusion. Nevertheless, before we order the parties to embark on yet another round of litigation, we find it preferable to ascertain first whether the record, as a matter of law, would not support a finding in Dr. Beitel's favor

[47] See id. at 119–20.

[48] Id. at 122 (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2697 (1998)); see Stephenson v. El-Batrawi, 524 F.3d 907, 914 (8th Cir. 2008) (quoting Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988) (per curiam) (same)).

Dr. Beitel also contends that the promissory notes functioned as "open lines of credit" that he had not drawn down to the extent OCA alleges. On the discrete facts of this case, this factual basis is sufficient in theory to support a conclusion that there is a possibility that the outcome after trial would not mirror the default judgment.

We must also determine whether the record precludes a finding in Dr. Beitel's favor on the issue of willfulness.[49] Our discussion of willfulness confirms that this is an issue that turns largely on testimony that the bankruptcy court labeled "he said, she said" evidence. Weighing each party's statement, a function peculiarly within the trial court's domain, is likely determinative on the willfulness issue. Thus, we cannot say that the record precludes a finding in favor of Dr. Beitel on this issue.

The other relevant, but not singularly determinative, factors — (1) prejudice to OCA, (2) the effect, if any on the public interest, (3) whether there was significant financial loss to Dr. Beitel, and (4) whether Dr. Beitel acted expeditiously to correct the default — are not so heavily weighted against Dr. Beitel that they alone would support our affirming the default judgment against him.[50] At least two of these factors likely weigh in Dr. Beitel's favor: (1) Dr. Beitel's loss — several hundred thousand dollars — is likely significant to him, and (2) Dr. Beitel appears to have acted expeditiously following entry of the default judgment by immediately thereafter filing an amended answer and then actively attempting to set aside that judgment. The public-policy factor may cut both ways because there is a value both in allowing trial of cases on the merits and in adhering to procedural rules. And, only one factor likely weighs in OCA's

---

[49]  Jenkens & Gilchrist, 542 F.3d at 122.

[50]  See, e.g., id. at 122–24 (finding that a number of the relevant factors appeared to weigh in defendant's favor and remanding to the district court for further proceedings, or at a minimum, for a more detailed ruling).

favor: It would likely experience some harm, perhaps minimal, in having to re-prove its liability and damages.

We conclude that the record does not offer sufficient support for the district court — nor this court — to make an independent determination that the bankruptcy court's decision was within its discretion.

## III. CONCLUSION

We vacate both the bankruptcy court's denial of Dr. Beitel's motion to set aside or to vacate the default judgment against him and the district court's order affirming the bankruptcy court. We remand this matter to the bankruptcy court for it to re-consider the willfulness element of Dr. Beitel's motion under the correct burden of proof, preponderance of the evidence, with instructions that the bankruptcy court's review include, at a minimum, an evidentiary hearing on the willfulness question. VACATED and REMANDED with instructions.