**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 8, 2009

Charles R. Fulbruge III
Clerk

No. 09-50364

In the Matter of:  DAVID THOMAS CHARLES MARINEZ,

Debtor

------------------------------------------------------------------------

JEFFREY W. HELLER,

Appellant

v.

TEXAS REAL ESTATE COMMISSION,

Appellee

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, WIENER, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Jeffrey W. Heller appeals the judgment of the district court, which affirmed an order of the bankruptcy court that set aside an order directing the Texas Real Estate Commission ("TREC") to pay Heller $100,000 from the Texas Real Estate Recovery Trust Account ("Trust Account").  Because the bankruptcy court did not abuse its discretion in setting aside the order, we AFFIRM the judgment of the district court.

Heller, a real estate investor, sued Marinez, a real estate broker, in Texas state court, alleging that Marinez violated the Texas Real Estate License Act. During the pendency of that lawsuit, Marinez filed for bankruptcy under Chapter 13. In an adversary proceeding initiated by Heller, the bankruptcy court found that Marinez was liable to Heller for $120,000, and that the debt was not dischargeable in bankruptcy.

To collect this debt, Heller then instituted a separate proceeding against the TREC, which administers a state fund to compensate victims of conduct of real estate license holders such as Marinez. This Texas statute provides that the victim must file the application for payment in the court that entered the judgment, here the bankruptcy court. Heller thus filed in the bankruptcy court an Application for Payment from the fund administered by the TREC. The bankruptcy court, without a hearing, ordered the TREC to pay Heller the maximum amount allowed under the Texas statute, $100,000. Upon TREC's motion, however, the bankruptcy court later set aside the order. After conducting a hearing, the bankruptcy court ordered the TREC to pay Heller only $18,963. Heller now appeals; but he only appeals the bankruptcy court's order setting aside the initial order directing the TREC to pay Heller $100,000. Accordingly, the only issue before us in this appeal is whether the bankruptcy court abused its discretion by setting aside its initial order directing the TREC to pay Heller $100,000.

I.

A.

The Trust Account, administered by the TREC, was established by the Texas Legislature to compensate victims of certain conduct of TREC license holders. TEX. OCC. CODE ANN. § 1101.601. One who has obtained a judgment against a license holder for conduct covered by the Texas Real Estate License Act may file a claim for payment from the Trust Account in the court that entered

2

the judgment, after having first demonstrated that the judgment cannot be collected from the license holder. *Id*. § 1101.606(a). The aggrieved person must give written notice of the claim to the TREC and the judgment debtor. *Id*. § 1101.606(b). The statute provides that "[t]he court shall proceed promptly on the application." *Id*. "On receipt of notice under Section 1101.606 and the scheduling of a hearing, the [TREC] may notify the attorney general of the [TREC]'s desire to enter an appearance, file a response, appear at the hearing, defend the action, or take any other action the [TREC] considers appropriate." *Id*. § 1101.608. Section 1101.607 describes the showing that the aggrieved claimant must make at a hearing on the Application for Payment. Among other things, the claimant must show "that the judgment is based on facts allowing recovery under this subchapter." Section 1101.609 provides:

> The court shall order the [TREC] to pay from the trust account the amount the court finds payable on the claim under this subchapter if at a hearing the court is satisfied:
>
> (1) of the truth of each matter the aggrieved person is required by Section 1101.607 to show; and
>
> (2) that the aggrieved person has satisfied each requirement of Sections 1101.606 and 1101.607.

### B.

In accordance with the provisions of the Texas statute, Heller, on December 12, 2007, filed his Application for Payment from the Trust Account. On February 20, 2008, the bankruptcy court entered an order directing the TREC to pay Heller $100,000, the maximum amount recoverable from the Trust Account. *See* TEX. OCC. CODE ANN. § 1101.610. Because this order does not fit neatly into a precise category, we treat it, as the parties do, as a "default order." Although the default order states that "[t]he parties appeared by and through their respective legal counsel" and that the "Court considered the Application,

3

received evidence, and heard argument from counsel," there was no hearing, no presentation of evidence, and no argument of counsel on the application.

Nine days later, on February 29, 2008, the TREC filed a motion to vacate the default order directing payment, citing Federal Rules of Bankruptcy Procedure 9023 and 9024, and Federal Rules of Civil Procedure 59(e) and 60(b)(1) and (6). In its motion, the TREC stated that although it was served with and aware of Heller's application, it was engaged in negotiations with Heller for an agreed resolution of Heller's claim. The TREC attached as an exhibit to the motion a letter that its counsel wrote to Heller's counsel on January 11, 2008, stating, "[p]lease do not set the claim for hearing while we explore the possibility of an agreed order . . . . I will present this claim at the February 25, 2008 [TREC] meeting if I have enough information to submit to the [TREC] for a determination." The TREC explained in the motion to vacate that it "focused its efforts on its negotiations with Mr. Heller, rather than litigating the application before this Court, because the TREC understood and believed that an order would not be entered in the proceeding without a hearing and an opportunity to be heard on the merits." Attached as an exhibit to the motion to vacate was a February 18 letter from Heller's counsel to the TREC's counsel submitting materials for the TREC's consideration at its February 25 meeting. In its motion to vacate, the TREC pointed out that Heller's actions were consistent with the TREC's understanding that an order would not be entered without a hearing, inasmuch as Heller's application did not contain negative notice language, and Heller had provided the TREC with documentation supporting his claim as recently as February 18, two days before the default order directing payment was entered. According to the parties, "negative notice" is language customarily

used in bankruptcy cases to indicate if and when a response is due and the consequences of failing to file a response.[1]

The bankruptcy court granted the TREC's motion to vacate the default order, stating that "[t]he TREC could reasonably have expected a hearing setting on the motion, because there was no negative notice." Following a hearing, the bankruptcy court entered an order directing the TREC to pay Heller $18,963 from the Trust Account. Heller appealed only the bankruptcy court's order setting aside the default order directing payment, and the district court affirmed. Heller now appeals to this court.

## II.

## A.

"We review a district court's affirmance of a bankruptcy court decision by applying the same standard of review to the bankruptcy court decision that the

---

[1] The bankruptcy court's local rules governing contested matters contain the following provision regarding "negative notice":

> **(a) Negative Notice Language**. Notice and an opportunity for a hearing may be accomplished by the inclusion of the following form language presented conspicuously, fully capitalized in bold faced type (at least 12 pt.) and placed immediately below the caption and before the body of the pleading. . . .

> **THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**

> **IF NO TIMELY RESPONSE IS FILED WITHIN TWENTY (20) DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**

> **A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

BANKR. W.D. TEX. R. 9014(a).

district court applied." *In re Martinez*, 564 F.3d 719, 725-26 (5th Cir. 2009). Although the bankruptcy court did not specify whether it acted under Rule 59(e) or Rule 60 in setting aside the default order directing payment, the abuse-of-discretion standard of review applies to its decision. *See Edward H. Bohlin Co., Inc. v. The Banning Co., Inc.*, 6 F.3d 350, 353 (5th Cir. 1993) (abuse of discretion standard applies to rulings on motions under Rule 59(e) and Rule 60(b)); *Beitel v. OCA, Inc. (Matter of OCA, Inc.)*, 551 F.3d 359, 367 (5th Cir. 2008) (bankruptcy court's decision to set aside default judgment is reviewed for abuse of discretion).

### B.

Heller argues that the TREC could not seek relief from the default order directing payment under Federal Rule of Civil Procedure 59 because that rule cannot be used to set aside a default judgment. Even if it could, Heller further contends, the TREC failed to satisfy the requirements of Rule 59 because it did not file any affidavits explaining why the TREC believed that it did not need to file a response to Heller's Application for Payment, how it formed that belief, and whether it checked with counsel. Heller also asserts that the TREC did not present any evidence to substantiate its claim that it was involved in negotiations with him. Moreover, the TREC failed to satisfy the requirements of Federal Rules of Civil Procedure 55(c) and 60(b), for the same reasons that it failed to satisfy Rule 59 – that is, the TREC did not present any evidence or affidavits.

In addressing Heller's arguments, we first note that Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure apply in bankruptcy cases (with certain exceptions not applicable here). FED. R. BANKR. P. 9023, 9024. Federal Rule of Civil Procedure 55, governing entry of default and default judgments, applies in adversary proceedings in bankruptcy court. FED. R. BANKR. P. 9055. Here, however, the TREC did not participate in the adversary proceeding and did not attack the bankruptcy court's judgment in that proceeding, which found Marinez

liable to Heller. Thus, the applicability of those rules in the circumstances of this Application for Payment from the Trust Account is not clear. As the district court noted, the TREC was not a party, or otherwise involved, in the adversary proceeding initiated by Heller against Marinez. It was only after that proceeding had concluded that the TREC was "sued" in the bankruptcy court. Still further, it is unclear that Heller's Application for Payment initiated a new adversary proceeding. *See* FED. R. BANKR. P. 7001 (listing categories of adversary proceedings). In short, whether Rule 55 applies to the proceedings on Heller's Application for Payment from the Trust Account administered by the TREC is a bit of a puzzle. Assuming, however, that Rule 55 applies, and that the order directing payment was a "default judgment," Rule 55(c) states that the court "may set aside a default judgment under Rule 60(b)." Because Rule 60(b) applies to "a final judgment, order, or proceeding," we think that it is unnecessary for us to decide whether the order directing payment was, in fact, a default judgment. We now turn to consider the rulings below under Rule 60(b).

C.

As we have suggested, it is not necessary for us to address Heller's argument that Rule 59 cannot be used to set aside a default judgment, because the TREC's motion to vacate also relied on Rule 60(b). Rule 60(b) provides, in relevant part,[2] that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6).

This court has described the "factors [that] shape the framework of the court's consideration of a 60(b) motion" as follows:

---

[2] Heller's assertion that the TREC's motion to vacate is unclear as to which subsection of rule 60(b) it relied on is incorrect. The motion clearly cites subsections (1) and (6).

(1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to do substantial justice; (4) whether the motion was made within a reasonable time; (5) whether – if the judgment was a default or a dismissal in which there was no consideration of the merits – the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgment, and there is merit in the movant's claim or defense; (6) whether there are any intervening equities that would make it inequitable to grant relief; and (7) any other factors relevant to the justice of the judgment under attack.

*Edward H. Bohlin Co.*, 6 F.3d at 355-57.

As our court recently noted, "[i]n assessing a motion to vacate a default judgment, we have interpreted Rule 60(b)(1) as incorporating the Rule 55 'good-cause' standard applicable to entries of default." *OCA*, 551 F.3d at 369 (quoting *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008)).

In determining whether good cause exists to set aside a default judgment under Rule 60(b)(1) we examine the following factors: whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. Courts may also consider whether the public interest was implicated, whether there was significant financial loss to the defendant, and whether the defendant acted expeditiously to correct the default.

*Jenkens & Gilchrist*, 542 F.3d at 119 (internal quotation marks and citations omitted).

The version of Rule 55(c) that was applied in *Jenkens & Gilchrist* and *OCA* provided: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." *See OCA*, 551 F.3d at 370 n.29. Effective December 1, 2007, Rule 55(c) was amended with respect to setting aside default judgments under Rule 60, and now provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under

Rule 60(b)." The amended version of Rule 55(c) applies in this case, because the bankruptcy court's order directing payment and its order vacating that order were entered after the effective date of the amendment. As this court noted in *OCA*, "[b]y deleting the word 'likewise,' the current version may confirm that the 'good-cause' standard applicable to entries of default does not apply to default-judgment cases." *OCA*, 551 F.3d at 370 n.29. We need not address that matter today, because the bankruptcy court did not abuse its discretion in setting aside the order directing payment, irrespective of whether the good-cause standard applies.

D.

The bankruptcy court stated that it vacated the default order because "[t]he TREC could reasonably have expected a hearing setting on the motion, because there was no negative notice." The court's finding that TREC reasonably could have expected a hearing is not clearly erroneous. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (stating that although a decision to set aside a default judgment is reviewed for abuse of discretion, "[a]ny factual determinations underlying that decision are reviewed for clear error"). Furthermore, in addition to the notice rules of the bankruptcy court, the provisions of the Texas Occupation Code, described previously, also contemplate that there will be a hearing prior to the entry of any order directing payment. Finally, the bankruptcy court's ruling is supported by the fact that the TREC's counsel was actively involved in discussions with Heller's counsel in an attempt to reach an agreed resolution of Heller's claim at the time of the entry of the default order.

Assuming that the TREC was required to demonstrate good cause, it has satisfied that requirement. The TREC's failure to respond to the motion was not willful. The TREC's counsel made repeated contacts with Heller's counsel in an attempt to reach an agreed resolution of Heller's claim. *See Lacy*, 227 F.3d at

292-93 (holding that although Sitel mistakenly assumed that service of process had not been effected, Sitel did not willfully fail to respond when its counsel had made repeated contacts with Lacy in an attempt to resolve the suit). Heller was not prejudiced by the order setting aside the default order directing payment. "There is no prejudice to the plaintiff where the setting aside of the default has done no harm to plaintiff except to require [him] to prove [his] case." *Id*. at 293 (internal quotation marks and citation omitted). The TREC had a meritorious defense, as evidenced by the fact that after a hearing on the merits, the bankruptcy court awarded Heller only $18,963, far less than the $100,000 it awarded in the original order directing payment. Heller did not appeal that award. Finally, the TREC acted expeditiously to correct the default – it filed the motion to vacate nine days after entry of the order directing payment.

Considering all of these circumstances, and in the light of the policy favoring resolution of disputes on the merits,[3] the bankruptcy court did not abuse its discretion by setting aside the default order directing payment.

### III.

For the foregoing reasons, the judgment of the district court, affirming the order of the bankruptcy court, is

AFFIRMED.

---

[3] *See OCA*, 551 F.3d at 370 (citations omitted) (noting preference for trial on the merits rather than default judgment where there are no "intervening equities").