NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-1151 & 10-3440
_____

SOURCECORP INCORPORATED

v.

JAMES KENNETH CRONEY, JR.; KIMBERLEY D. CRONEY,

Appellants

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-08-cv-05958)
District Judge:  Honorable Petrese B. Tucker
_____

Argued November 17, 2010
_____

Before:  AMBRO, FISHER and GREENBERG, Circuit Judges

(Opinion filed: January 19, 2011)


Karl S. Myers, Esquire (Argued)
Stradley, Ronon, Stevens & Young
2600 One Commerce Square
2005 Market Street
Philadelphia, PA  19103

     Counsel for Appellants

Howard J. Bashman, Esquire (Argued)
Suite G-22
2300 Computer Avenue

Willow Grove, PA   19090-0000

Mary Kay Brown, Esquire
Brown Stone Nimeroff
2001 Market Street, Suite 3420
Two Commerce Square
Philadelphia, PA   19103-0000

Christopher B. Trowbridge, Esquire
Bell Nunnally & Martin
3232 McKinney Avenue
Suite 1400
Dallas, TX  75204

       Counsel for Appellee

_____

OPINION

_____

AMBRO, Circuit Judge

This is a consolidated appeal from the District Court's entry of a default judgment

against Defendant-Appellants Kenneth and Kimberly Croney, and the District Court's

subsequent decision holding the Croneys in contempt of court and assessing monetary

damages and attorneys' fees.[1]  We vacate and remand.

## I.    Procedural Background

### A.    The District Court's Entry of a Default Judgment

The underlying lawsuit in this case, filed on December 23, 2008, alleges that the

Croneys engaged in a series of fraudulent transfers in order to avoid paying a judgment

---

[1] The District Court had jurisdiction over this diversity action pursuant to 28 U.S.C.
§ 1332.  We have jurisdiction under 28 U.S.C. § 1291.

2

awarded to Sourcecorp in a previous lawsuit. What followed was a procedural morass, which we describe briefly.

The Croneys moved to dismiss Sourcecorp's suit on March 2, 2009, and the District Court denied the motion in an order entered on October 8, 2009, triggering the application of Fed. R. Civ. P. 12(a)(4)(A). That Rule required the Croneys to answer the complaint within 14 days. However, the Croneys' counsel failed to file an answer or obtain an extension of time by the deadline. About three weeks after the deadline passed, the District Court's Courtroom Deputy signed and sent a letter to Sourcecorp's counsel, directing him to request from the Court Clerk an entry of default against the Croneys.[2] The Courtroom Deputy did not send a copy of this letter to the Croneys or their counsel.

Sourcecorp's counsel received the letter on November 30, 2009, and requested an entry of default pursuant to Fed. R. Civ. P. 55(a) that day. The Court Clerk entered the default on December 1. Seven days later, the Croneys moved to lift the default, and filed a proposed answer. However, on the same day the District Court signed an order entering judgment in favor of Sourcecorp, purportedly "upon consideration of Plaintiff's Request for Entry of Default Judgment." The "Request for Entry of Default Judgment" to which the Court referred was actually Sourcecorp's request that the Court Clerk enter a default against the Croneys.

On December 9, 2009, the Croneys filed a motion seeking to undo the default judgment, and Sourcecorp filed a motion for judgment on the day after that. On

---

[2] An entry of default is a purely ministerial act carried out by a court clerk on request in cases in which a defendant has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).

December 11, the District Court denied the Croneys' motion, describing in a one-paragraph footnote why they had failed to show their entitlement to relief. Following that decision, the Croneys filed additional motions aimed at undoing the default judgment, all of which were denied in a one-sentence order entered on January 5, 2010. Finally, on January 8, the District Court entered a final judgment ordering that the Croneys pay Sourcecorp approximately $1.5 million in damages and attorneys' fees.

### B. The Contempt Motion and Subsequent Order

Immediately following the District Court's entry of final judgment, Sourcecorp moved for an injunction freezing the Croneys' assets. Eventually, the Croneys consented to, and the District Court entered, an injunction forbidding them from spending or transferring money, with certain exceptions, including that they were permitted to spend $25,000 per month on general living expenses. With that injunction in place, the District Court stayed execution of the judgment pending appeal.

On May 26, 2010, Sourcecorp moved the District Court to hold the Croneys in contempt of the injunction, charging that they had spent money on luxuries (such as country club memberships and a trip to France), written checks out to cash, and made other proscribed payments and transfers between themselves individually, and on behalf of companies owned by them. In a short memorandum and order, the District Court agreed that the Croneys had violated the injunction and ordered them to pay damages in

4

the amount of $146,157 plus $12,120.50 in attorneys' fees, for a total of slightly over $158,000. The Court also lifted the stay of execution of the judgment.[3]

This appeal followed.

## II. Analysis

### A. Standard of Review

This Court reviews *de novo* the Croneys' argument that the District Court's judgment is void because it was entered in violation of their due process rights. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 n.5 (3d Cir. 2008); *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978). However, if the District Court's judgment is not void, we review for abuse of discretion its refusal to set aside the entry of default. *In re The Home Rests., Inc.*, 285 F.3d 111, 115 (1st Cir. 2002). Finally, we review contempt findings and associated sanctions for abuse of discretion, reversing only where the decision "is based on an error of law or a finding of fact that is clearly erroneous." *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009) (internal quotation marks and citation omitted).

### B. The Default Judgment

The Croneys make three primary arguments as to why we should reverse the District Court's entry of a default judgment: (1) that the Courtroom Deputy's *ex parte* letter was improper; (2) that the District Court erred as a matter of law by entering the default judgment without adhering to the requirements of Rule 55(b); and (3) that the

---

[3] On August 16, 2010, our Court stayed the execution of the judgment pending the outcome of this appeal.

District Court abused its discretion by failing to weigh properly the factors applicable to the motions to lift the default judgment. The Croneys also argue that these purported legal errors are individually or collectively sufficient to amount to a due process violation. We agree with the Croneys that the District Court did not properly apply Rule 55(b), and we vacate and remand on that basis.

Rule 55 sets forth a two-part process for obtaining a default and then a default judgment. First, when a defendant has "failed to plead or otherwise defend," "the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Then, in cases like this one, in which the defendant has appeared, Fed. R. Civ. P. 55(b)(2) governs the process for converting a "default" into a "default judgment." That Rule states, in relevant part, that

> the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals — preserving any federal statutory right to a jury trial — when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Thus, a defendant who has appeared in a case generally is entitled to no less than seven days' advance notice of any motion for default judgment. However, some courts of appeals have held that, at least under egregious circumstances, district courts may enter default judgments *sua sponte* and, moreover, may do so without advance notice to the defendant. *See, e.g.*, *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Intern.*, 982 F.2d 686, 692-93 (1st Cir. 1993) (district court did not err in granting default

judgment *sua sponte*, and without first notifying defendant, when defendant had failed to appear for trial).

Here, the District Court neither followed the notice provision of Rule 55(b), nor did it intentionally enter the default judgment *sua sponte*. Rather, it stated that it was entering the default judgment "upon consideration of Plaintiff's Request for Entry of Default Judgment." The problem is that, at the time the Court entered that order, Sourcecorp had not requested entry of default judgment, but had merely sought to have the Clerk indicate that the Croneys were in default.

We cannot conceive of a way that such a procedure is adequate to sustain the entry of default judgment. Default judgments are disfavored in our Circuit, *Budget Blinds, Inc.*, 536 F.3d at 258, and the notice procedure created by Rule 55 is integral to ensuring that litigants' rights are adequately protected. Further, even if there might exist a situation in which a district court could reasonably enter a default judgment *sua sponte*— for example, where it is clear that a litigant has utterly abandoned the case—this is not such a case.

Nor does the District Court's January 8 order, in which it ordered relief and finally disposed of the case, save the default judgment in this case. While that order was issued pursuant to a motion of which the Croneys received notice, it is not clear that that the District Court actually considered anew whether it was appropriate to enter a default judgment against the Croneys, or whether it was simply proceeding based on its earlier

order.  Absent a clear indication from the Court that it had discovered the earlier procedural mistake and taken pains to correct it, we must reverse the default judgment.[4]

Finally, we note that, even if the default judgment were entered absent procedural problems, we would find it difficult, if not impossible, to affirm that judgment.  In deciding whether to set aside a default (under Fed. R. Civ. P. 55(c)) or a default judgment (under Fed. R. Civ. P. 60(b)(1) or (b)(6)), a district court is to consider "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct."  *United States v. $55,518.05 in United States Currency*, 728 F.2d 192, 195 (3d Cir. 1984); *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656 (3d Cir. 1982) (stating that three factors should be considered whether a default or a default judgment is at issue, though they should be applied more leniently in the case of a default).  In some cases, our Court has also considered "the effectiveness of alternative sanctions."  *E.g.*, *Emcasco Ins. Co. v. Sambric*, 834 F.2d 71, 73 (3d Cir. 1987).

---

[4] We also reject Sourcecorp's argument that the December 9 judgment was not a genuine default judgment because it did not order any relief, and that therefore the January 8 order is the only default judgment in this case.  Our Court has previously defined a "final judgment" as one that "leaves nothing for the court to do but execute the judgment." *Penn West Associates, Inc. v. Cohen*, 371 F.3d 118, 125 (3d Cir. 2004) (internal quotation marks and citation omitted).  However, nothing in the text of Rule 55 requires that a default judgment also be a final judgment.  Further, Sourcecorp's reliance on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1364 n.27 (11th Cir. 1997), is misplaced.  That case involved a purported "default judgment" that was entered by the clerk, not the judge.  Therefore, it was far more clear that a simple error in terminology was at work, because the court clerk was not empowered to issue a default judgment in the first place.  Here, in contrast, it is implausible that the District Court understood itself to be doing anything but entering a true default judgment, particularly given that the court clerk had already noted the Croneys' default.

The District Court weighed those factors in a half-page footnote appended to its December 11 Order. In that footnote, the Court stated, in relevant part:

> Here, Defendants have not described their alleged meritorious defenses with any specificity, and lifting an entry of default judgment at this point in the proceedings will serve to prejudice Plaintiffs, as they would be required to expend additional funds to litigate this matter. Defendants' conduct here is culpable, and if not, negligent, given that the parties have, according to Defendants, participated in some discovery, and as such, Defendants[] were on notice that responsive pleadings were to be filed by a specified date. Defendants will not be granted more "bites at the apple" than the Rules allow, and here, Defendants had sufficient notice of their duty to respond. As a result, the Court will deny their motion.

Our problem with what the Court did particularly concerns the first and third factors. First, we have previously held that the costs associated with continued litigation normally cannot constitute prejudice. *E.g., Emcasco Ins. Co.*, 834 F.2d at 74; *Feliciano*, 691 F.2d at 656-57 ("delay in realizing satisfaction on a claim rarely serves to establish [a sufficient] degree of prejudice"). Additionally, the District Court found that the Croneys' failure to file an answer was "culpable, and if not, negligent." But the standard is "culpable;" mere negligence should not weigh against the Croneys. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir. 1984) ("[a]ppropriate application of the culpable conduct standard requires that as a threshold matter more than mere negligence be demonstrated"). And, if the District Court had applied the proper legal standard, we would be forced to conclude that it abused its discretion by finding that the Croneys' attorney's failure to file an answer on time was culpable conduct sufficient to support the imposition of a default judgment. *Cf. Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805, 808 (3d Cir. 1986) (reversing dismissal imposed as sanction for discovery violations

9

where fault was attorney's, not client's, and client promptly fired attorney upon learning of violation).

However, it is the second factor—whether the Croneys have a meritorious defense—that makes this case close. We shall not engage in the futile exercise of remanding a case in which there is no potential defense. *$55,518.05 in U.S. Currency*, 728 F.2d at 195-96. And the Croneys' presentation of potential defenses is thin at best. In their brief in our Court, the Croneys merely list six purported "defenses," some of which are not actually defenses, but rather general statements of law (such as that a "veil piercing theory" is a "very difficult claim to prove"). Nonetheless, we think the Croneys' assertions that individual transfers of money were not fraudulent, but rather reasonable payments for services actually rendered, are—barely—sufficient to support a remand.

Accordingly, we vacate and remand the District Court's decision entering a default judgment against the Croneys.

### C.    The Contempt Order

The Croneys argue that the contempt order should fall with the default judgment, but that even if it does not, they did not violate the terms of the injunction and the District Court abused its discretion in its award of damages, sanctions, and attorneys' fees. We agree with the Croneys that, under the circumstances presented in this case, the civil contempt order cannot survive our decision to vacate the default judgment.

Sourcecorp sought and obtained an injunction only after the District Court entered the default judgment, and both the injunction and the subsequent contempt order were designed to protect Sourcecorp's rights under that judgment. *See Mann v. Calumet City*,

10

588 F.3d 949, 955 (7th Cir. 2009) (purpose of civil contempt is to "protect a litigant's rights"). However, we hold today that Sourcecorp has not yet demonstrated its entitlement to judgment. While it is "true that the reversal of the decree does not retroactively obliterate the past existence of the violation[,] . . . it does more than destroy the future sanction of the decree. . . . [T]he right which it affected to create was no right at all." *Id.* (quoting *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*, 86 F.2d 727 (2d Cir. 1939)). Thus, Sourcecorp is not entitled to compensation based on the Croneys' violation of an order that would not have been in place but for the premature entry of default judgment.[5]

Accordingly, we vacate the District Court's rulings entering the default judgment against the Croneys and holding them in contempt, and remand for further proceedings consistent with this opinion.

---

[5] We are sensitive to Sourcecorp's concern that the Croneys may dissipate their assets and those of their companies before Sourcecorp has an opportunity to obtain and collect on a judgment. However, this concern is best raised and addressed through the preliminary injunction mechanism on remand, and not through a contempt proceeding that is ultimately premised on the faulty default judgment.