# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10096

United States Court of Appeals
Fifth Circuit

**FILED**
January 24, 2014

Lyle W. Cayce
Clerk

RICK SCOTT, also known as Chief Rick Scott,

Plaintiff - Appellee

v.

SALVATORE CARPANZANO; CARMELA ANN CARPANZANO; MARISA BELCASTRO,

Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Texas
US.DC No. 5:12-CV-6

Before BARKSDALE, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:*

Rick Scott filed suit against Salvatore Carpanzano, Marisa Belcastro, and Carmela Carpanzano (collectively, the "Defendants") and others, alleging various claims relating to his loss of approximately $2,000,000 placed in an escrow account. The district court entered default judgments against the Defendants. The Defendants appeal the district court's denial of their subsequent motions to set aside the default judgments. We AFFIRM the district court's denial of relief to Salvatore Carpanzano and Marisa Belcastro,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10096

and VACATE the district court's denial of relief to Carmela Carpanzano with respect to the monetary default judgment against her and REMAND for further proceedings.

## I. Background

In December 2011, Rick Scott ("Scott") sued Salvatore Carpanzano ("Mr. Carpanzano") and others in state court alleging various claims related to the wrongful transfer of funds that Scott placed in an escrow account. Mr. Carpanzano removed the case to federal court asserting diversity and federal-question jurisdiction. Mr. Carpanzano also filed a motion to dismiss for lack of personal jurisdiction, which was denied. At the time of these initial filings, Mr. Carpanzano was represented by Stephen Walraven. But on February 6, 2012, Walraven filed a motion to withdraw as counsel, informing the court that Mr. Carpanzano "failed to cooperate with the discovery process" and "refused to appear as requested and ordered." Walraven averred that he had sent a copy of the motion to Mr. Carpanzano by certified mail, regular mail, and email, with no response. He further stated that he believed Mr. Carpanzano to be out of the country at the time, but that prior efforts to contact him by email had been successful. Walraven provided the court with Mr. Carpanzano's last known mailing address and email address. Mr. Carpanzano did not file a response to the motion to withdraw, and the district court granted the motion on February 10, 2012.

By February 16, 2012, Mr. Carpanzano had retained the law firm of Springer & Steinberg to represent him. According to Scott's counsel, attorneys with Springer & Steinberg informed them that they represented Mr. Carpanzano, but that they had not been authorized to enter an appearance in the district court. While the Springer & Steinberg attorneys never entered an appearance in the district court, they conducted extensive settlement

No. 13-10096

negotiations with Scott's attorneys and communicated with Mr. Carpanzano regarding the potential for settlement up until September 2012.

Scott filed his second amended complaint on March 28, 2012, adding as defendants Mr. Carpanzano's wife, Marisa Belcastro ("Ms. Belcastro"), and Mr. Carpanzano's daughter, Carmela Carpanzano ("Ms. Carpanzano"). Ms. Belcastro and Ms. Carpanzano were personally served with the second amended complaint. Scott emailed the second amended complaint to Mr. Carpanzano's last known email address and Mr. Carpanzano's attorneys at Springer & Steinberg.

The second amended complaint asserts numerous claims and contains substantial factual allegations against Mr. Carpanzano and Ms. Belcastro. In relevant part, it alleges that Scott entered into an escrow agreement regarding a contemplated loan transaction, pursuant to which Scott was to transfer $2 million into an escrow account maintained by a trust and investment company owned and managed by Mr. Carpanzano and Ms. Belcastro. The complaint alleges that Mr. Carpanzano made significant misrepresentations regarding the contemplated loan transaction, escrow account, and trust and investment company, which induced Scott into wiring $2 million to the escrow account. Further, it alleges that immediately after Scott placed the funds in the account, Ms. Belcastro initiated a series of transactions by which she withdrew or transferred the majority of the $2 million out of the account in violation of the escrow agreement.

By contrast, the second amended complaint does not contain any factual allegations of acts, omissions, or knowledge on the part of Ms. Carpanzano. The only fact alleged relating to Ms. Carpanzano is that $46,608.94 of the funds transferred out of the account were used to purchase a 2008 Land Rover Range Rover that was titled in Ms. Carpanzano's name.

No. 13-10096

The Defendants did not file answers to the second amended complaint, and Scott sought and obtained a clerk's entry of default against each of them. Scott then filed motions for default judgment against the Defendants. Hearings were held on the motions, but the Defendants did not appear at the hearings. On June 14, 2012, the district court entered a default judgment against Mr. Carpanzano and Ms. Carpanzano for $2,050,000 in actual damages, jointly and severally with the other defendants, $4,100,000 in punitive damages against Mr. Carpanzano, and $50,000 in punitive damages against Ms. Carpanzano. On August 28, 2012, the district court entered a default judgment against Ms. Belcastro for $2,050,000 in actual damages, jointly and severally with the other defendants, and $4,100,000 in punitive damages.

On December 18, 2012, through newly retained counsel, the Defendants filed motions to set aside the default judgments. Mr. Carpanzano argued that the default judgment against him should be set aside as void pursuant to Federal Rule of Civil Procedure 60(b)(4), and all three Defendants argued that the default judgments should be set aside for good cause pursuant to Federal Rules of Civil Procedure 55(c) and 60(b)(1). After holding a hearing, the district court denied the motions. The Defendants timely appealed the district court's denial of their motions.[1]

## II. Mr. Carpanzano's Request Pursuant to Rule 60(b)(4)

Federal Rule of Civil Procedure 60(b)(4) allows a court to relieve a party from a final judgment if the judgment is void. FED. R. CIV. P. 60(b)(4). It applies only when a judgment is premised on a "jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be

---

[1] After filing a notice of appeal, Mr. Carpanzano filed a motion to dismiss for want of subject-matter jurisdiction in the district court. Having examined the issue ourselves, we conclude, as did the district court, that subject-matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a).

4

heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). Our review of a district court's Rule 60(b)(4) ruling is effectively *de novo* because a judgment is either a legal nullity or not. *FDIC v. SLE, Inc.*, 722 F.3d 264, 267 (5th Cir. 2013).

Mr. Carpanzano argues that the default judgment against him is void for want of due process because he was not served with the second amended complaint, the motion for default judgment, or the default judgment in compliance with Federal Rule of Civil Procedure 5. *See* FED. R. CIV. P. 5 (governing service of pleadings and other filings). Even assuming that Scott did not comply with Rule 5, Supreme Court precedent and precedent of this court make clear that serious procedural irregularities during the course of a proceeding, without more, do not amount to a deprivation of due process. *See Espinosa*, 559 U.S. at 272 ("[F]ailure to serve [a party] with a summons and complaint deprived [the party] of a right granted by a procedural rule. . . . But this deprivation did not amount to a violation of [the party's] constitutional right to due process." (internal citation omitted)); *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 210 (5th Cir. 2003) (noting that "[p]rocedural irregularities during the course of a civil case, even serious ones," do not amount to a due process violation that would render a judgment void (citation and internal quotation marks omitted)). Instead, the measure of due process is whether there was "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Espinosa*, 559 U.S. at 272 (citation and internal quotation marks omitted).

The record demonstrates that Mr. Carpanzano received notice sufficient to satisfy his right to due process. He was well aware of the pendency of the action against him: there is no dispute that Mr. Carpanzano was served with the initial complaint in this action, removed the case to federal court, and filed

a motion to dismiss.  Thereafter, his attorney withdrew and notified all involved that he believed Mr. Carpanzano was out of the country but that "prior efforts to contact him by e-mail ha[d] been successful."  While the typical means of providing notice to a party whose attorney has withdrawn may be by regular mail to the party's last known mailing address, *see* FED. R. CIV. P. 5(b)(2)(C), Mr. Carpanzano recognizes in his appellate brief that reliance on this method may have, itself, violated due process because attempts to serve him by this method had repeatedly proven unsuccessful and he was purportedly out of the country.  *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 142–43 (5th Cir. 1996) (finding a judgment void for want of due process where a court tried to serve a party at an address it should have known was not his last known address).

In these circumstances, the most reasonable means of providing continued notice to Mr. Carpanzano may have been at his last known email address as provided by his previous counsel.  In addition, once Scott's attorneys were notified that Mr. Carpanzano was represented by attorneys at Springer & Steinberg, providing notice to Mr. Carpanzano's new counsel was likely the most reasonable means of providing continued notice to Mr. Carpanzano.  *See* FED. R. CIV. P. 5(b)(1) ("If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party."); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) ("Under our system of representative litigation, each party . . . is considered to have notice of all facts, notice of which can be charged upon the attorney." (citation and internal quotation marks omitted)).  Scott employed both of these means of providing notice to Mr. Carpanzano.

Scott's attorneys attest by affidavit that they sent all relevant filings and notices to Mr. Carpanzano's last known email address, an alternate email address believed to belong to Mr. Carpanzano, and the email address of Mr.

Carpanzano's new counsel.    Copies of the emails were attached to the affidavits.  Notably, although Mr. Carpanzano is in the best position to dispute this evidence, he does not do so.  He does not offer any evidence, or even attest, that he did not receive these emails or that either email address used by Scott's attorneys did not belong to him.  Mr. Carpanzano admits that he retained the Springer & Steinberg law firm to represent him in this matter, and he never states that his attorneys did not receive these emails or did not remain in contact with him.  Moreover, the affidavits by Scott's attorneys and attached emails confirm that Mr. Carpanzano's attorneys received the emails and were actively participating in settlement negotiations on his behalf and communicating with him regarding the matter.

Under the circumstances of this case, we have no difficulty concluding that Mr. Carpanzano received notice reasonably calculated to apprise him of the pendency of the action and afford him an opportunity to present his objections. *See Espinosa*, 559 U.S. at 272.[2]  The default judgment against him is not void for want of due process.

## III.  The Defendants' Request Pursuant to Rules 55(c) and 60(b)(1)

### A.  Applicable Law

Rule 55(c) provides that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."  FED. R. CIV. P. 55(c).  Rule 60(b)(1) provides that a court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1).  Where, as here, a party seeks to set aside a default judgment pursuant to Rule 60(b)(1), this court has consistently held that three

---

[2] We hold only that, in the specific circumstances of this case, the notice received did not constitute a violation of the constitutional right to due process. *See Espinosa*, 559 U.S. at 272.  We specifically do not address whether Rule 5 was satisfied or whether the notice employed here would suffice under different facts.

primary factors are to be considered: whether the defendant willfully defaulted, whether a meritorious defense is presented, and whether setting aside the default judgment would prejudice the plaintiff. *See Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008); *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000).[3] Of these factors, two can be determinative: a district court may refuse to set aside a default judgment if it finds either that the default was willful or that the defendant failed to present a meritorious defense. *See Jenkens & Gilchrist*, 542 F.3d at 119–20. Other facts that may be considered include whether the public interest is implicated, whether there is significant financial loss to the defendant, and whether the defendant acted expeditiously to correct the default. *Id.* at 119.

In conducting this analysis, "federal courts should not be agnostic with respect to the entry of default judgments, which are generally disfavored in the law." *Lacy*, 227 F.3d at 292 (citation and internal quotation marks omitted).

---

[3] We have explained that this "good-cause" analysis developed from our interpreting "Rule 60(b)(1) as incorporating the Rule 55 'good-cause' standard applicable to entries of default." *In re OCA, Inc.*, 551 F.3d 359, 369 (5th Cir. 2008). In 2007, Rule 55 was reworded as part of the general restyling of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 55 advisory committee's note on 2007 amendments. Although this rewording was "intended to be stylistic only," *id.*, we observed in dicta that it "may one day cause us to reassess the relationship between the Rule 55(c) good-cause standard and Rule 60(b)(1)," *In re OCA, Inc.*, 551 F.3d at 370. Nevertheless, since Rule 55(c) was reworded, we have continued to apply the good-cause factors to motions to set aside default judgments, *see, e.g.*, *In re Marinez*, 589 F.3d 772, 777–78 (5th Cir. 2009), as have our sister circuits, *see, e.g.*, *United States v. $285,350.00 in U.S. Currency*, No. 13-6081, 2013 U.S. App. LEXIS 24104, at *3–4 (10th Cir. Dec. 4, 2013); *United States v. Chesir*, 526 F. App'x 60, 61 (2d Cir. 2013) (unpublished); *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 838–39 (6th Cir. 2011); *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011); *Sourcecorp Inc. v. Croney*, 412 F. App'x 455, 459 (3d Cir. 2011) (unpublished). This case presents no occasion for us to reassess the analysis. The parties and the district court employed our traditional good-cause analysis, with none proposing modification. Furthermore, were we to analyze this case pursuant to Rule 60(b)(1) only, we find that the outcome would be the same because the good-cause factors largely overlap with the factors considered under a motion pursuant to Rule 60(b)(1) alone. *See In re Marinez*, 589 F.3d at 776–77 (listing both the Rule 60(b) factors and the good-cause factors and observing that the outcome of the case would be the same irrespective of which standard applied); *In re OCA, Inc.*, 551 F.3d at 370 (noting that "conflation of the applicable standards in this case would be harmless").

"Rule 60(b) [should be] applied most liberally to judgments of default, since trial on the merits is to be favored over such a truncated proceeding. Unless it appears that no injustice results from the default, relief should be granted." *In re OCA, Inc.*, 551 F.3d 359, 370–71 (5th Cir. 2008) (citation and internal quotation marks omitted).

We review a district court's denial of a motion to set aside a default judgment pursuant to Rule 60(b)(1) for abuse of discretion; however, "[b]ecause of the seriousness of a default judgment, . . . even a slight abuse of discretion may justify reversal." *Jenkens & Gilchrist*, 542 F.3d at 118 (quoting *Lacy*, 227 F.3d at 292) (internal quotation marks omitted). Whether a defendant willfully defaulted is a factual finding that we review for clear error. *In re OCA, Inc.*, 551 F.3d at 367.

## B. Willful Default

"A *willful default* is an 'intentional failure' to respond to litigation." *Id.* at 370 n.32 (emphasis in original) (quoting *Lacy*, 227 F.3d at 292). The district court found that all three Defendants willfully defaulted based on evidence that the Defendants were aware of the proceedings against them and that the Springer & Steinberg attorneys were specifically instructed not to enter an appearance in this case. We review the district court's finding as it applies to each defendant.

The evidence substantially supports the district court's finding as to Mr. Carpanzano. First, Mr. Carpanzano's first attorney withdrew because Mr. Carpanzano "failed to cooperate with the discovery process" and "refused to appear as requested and ordered." Second, affidavits by Scott's attorneys and supporting emails suggest that Mr. Carpanzano instructed his second set of attorneys to negotiate settlement of this matter but not to enter an appearance in the district court. Significantly, Mr. Carpanzano never denies this allegation. Third, this same evidence demonstrates that Mr. Carpanzano and

his attorneys were well aware that the case was proceeding toward default and that they were in communication with each other during this time. Fourth, the evidence suggests that, once final execution of settlement papers was at hand, Mr. Carpanzano also ceased communication with his second set of attorneys and did not finalize the settlement. Finally, other than ambiguously suggesting that a health condition (unsupported by any evidence of what the condition was) and absence from the country (unsupported by any evidence that electronic communication was not possible from that country) prevented him from defending this action, Mr. Carpanzano offers no real reason why he did not answer the second amended complaint despite having attorneys in the United States who were communicating with him regarding the case and actively pursuing settlement.

In short, the district court's finding that Mr. Carpanzano willfully defaulted is not clearly erroneous. Accordingly, we hold that the district court acted within its discretion in refusing to set aside the default judgment against Mr. Carpanzano. *See In re OCA, Inc.*, 551 F.3d at 370 (stating that we may hold a district court acted within its discretion in denying relief from a default judgment if the defendant willfully defaulted). We therefore do not address how the remaining good-cause factors might apply to Mr. Carpanzano.

By contrast, the record does not support the district court's finding that Ms. Belcastro and Ms. Carpanzano also willfully defaulted by retaining counsel and then instructing them not to enter an appearance in the district court. We have found nothing in the record indicating that Ms. Belcastro and Ms. Carpanzano were ever in contact with the Springer & Steinberg attorneys or that they retained them as counsel. Scott puts forth no such evidence.[4]

---

[4] In fact, in the section of Scott's appellate brief devoted to this argument, Scott mentions only the actions of Mr. Carpanzano. He does not address how Ms. Belcastro and Ms. Carpanzano willfully defaulted, nor does he explain why Mr. Carpanzano's actions should be attributed to his wife and daughter.

Instead, the emails submitted by Scott's attorneys reveal that at the time Mr. Carpanzano hired the Springer & Steinberg attorneys, Ms. Carpanzano and Ms. Belcastro were not defendants in this action; after the second amended complaint was filed, the proposed settlement circulated between Scott's counsel and Mr. Carpanzano's counsel simply contemplated that any settlement would serve to release the claims against the majority of the defendants, including Ms. Belcastro, Ms. Carpanzano, and others.    Ms. Carpanzano states in her affidavit that her father hired the Springer & Steinberg attorneys and that they never contacted her.

In their evidence, both Ms. Belcastro and Ms. Carpanzano repeatedly indicate that they were relying on Mr. Carpanzano (husband to one, father to the other) to make sure their interests were protected.  Nothing in the record contradicts this assertion.  While their reliance on Mr. Carpanzano acting with the attorneys he retained may have been negligent, it does not amount to an "'intentional failure' to respond to litigation." *In re OCA, Inc.*, 551 F.3d at 370 n.32 (quoting *Lacy*, 227 F.3d at 292).  Because it is not plausible in light of the record as a whole, the district court's finding that Ms. Belcastro and Ms. Carpanzano willfully defaulted is clearly erroneous.[5]  We therefore consider

---

[5] It appears that the district court relied upon the post-judgment failure of Ms. Belcastro and Ms. Carpanzano to respond to discovery and discovery orders to support the finding of willfulness.  However, under the willful-default factor, our cases do not broadly take into account all potentially culpable actions of the defendant.  The inquiry is properly constrained to examining the defendant's pre-default actions to determine whether the defendant intentionally failed to file an answer or other responsive pleading after being served with a complaint. *See, e.g.*, *In re OCA, Inc.*, 551 F.3d at 370 n. 32 ("A *willful default* is an intentional failure to respond to litigation." (emphasis in original) (citation and internal quotation marks omitted)); *Lacy*, 227 F.3d at 292 (describing willful default as an "intentional failure of responsive pleadings" (citation and internal quotation marks omitted)); *In re Dierschke*, 975 F.2d 181, 184–85 (5th Cir. 1992) (describing willful default as an intentional or willful "failure to answer"); *Fed. Sav. & Loan Ins. Corp. v. Kroenke*, 858 F.2d 1067, 1070 (5th Cir. 1988) (considering the defendant's "culpability in allowing a default judgment to be entered against him").  Here, the record does not demonstrate that Ms. Belcastro and Ms. Carpanzano acted intentionally or willfully in failing to file an answer or other responsive pleading.

whether the remaining factors support denying relief to Ms. Belcastro and Ms. Carpanzano.

*C. Meritorious Defense*

A district court has the discretion not to set aside a default judgment if the defendant "fails to present a meritorious defense sufficient to support a finding on the merits" in its favor. *Lacy*, 227 F.3d at 293. This generally requires that the defendant provide "definite factual allegations, as opposed to mere legal conclusions, in support of her defense." *Jenkens & Gilchrist*, 542 F.3d at 122. In determining whether a meritorious defense exists, the underlying concern is "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *In re OCA, Inc.*, 551 F.3d at 373 (citation and internal quotation marks omitted).

In this case, the second amended complaint asserts the following claims against Ms. Belcastro: aiding and abetting a breach of fiduciary duty, violation of the Texas Fraudulent Transfer Act, civil conspiracy, violation of the Texas Theft Liability Act, and violation of the Texas Deceptive Trade Practices Act. It contains specific factual allegations implicating Ms. Belcastro in these claims, including that she was a managing member of the trust company that Scott's funds were entrusted to, that she performed a series of wrongful transfers to others from the purported escrow account, that she wrongfully transferred funds to her own personal account from the purported escrow account, and that she wrongfully withdrew funds from the purported escrow account. In total, these facts amount to an allegation that Ms. Belcastro wrongfully withdrew or transferred the majority of the $2 million Scott placed into the escrow account. At the hearing on the motion for default judgment, Scott submitted evidence supporting these factual allegations.

Ms. Belcastro's defenses before the district court were that she had no knowledge of the inner workings of her husband's business, she did not personally enter into a contract with Scott or seek to defraud him, and she had limited involvement in the facts of this case. Beyond a brief, half-page affidavit asserting these defenses, Ms. Belcastro offers no evidence to support her defenses. Nor does she deny involvement in the alleged transactions. In fact, she admits to opening the account and transferring funds out of the account. The district court found that she failed to demonstrate a meritorious defense in part because she made "only conclusory statements about available meritorious defenses." We agree. Ms. Belcastro did not provide "definite factual allegations" or evidence that would lend support to her general defenses. *Jenkens & Gilchrist*, 542 F.3d at 122. Significantly, she does little to rebut the substantial factual allegations in the second amended complaint, the evidence put forth by Scott to secure the default judgment against her. In light of this and her admitted involvement in the allegedly fraudulent transactions, it is apparent that Ms. Belcastro falls short of presenting "a meritorious defense sufficient to support a finding on the merits" in her favor. *Lacy*, 227 F.3d at 293. Her paltry showing also does not demonstrate that there is a "possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *In re OCA, Inc.*, 551 F.3d at 373 (citation and internal quotation marks omitted). Given this conclusion, we hold that the district court acted within its discretion in refusing to set aside the default judgment against Ms. Belcastro. *See id.* at 370 (stating that we may hold that a district court was within its discretion in refusing to grant relief from a default judgment if the defendant failed to present a meritorious defense). Thus, we do not consider how the remaining good-cause factors might also apply to her situation.

The analysis yields a different result in regards to Ms. Carpanzano.  The second amended complaint is entirely devoid of any factual allegations to support the two claims asserted against her (aiding and abetting a breach of fiduciary duty and violation of the Texas Fraudulent Transfer Act).  It contains no factual allegations of acts or omissions on the part of Ms. Carpanzano.  It does not allege that she ever was in contact with Scott, that she was in control of the trust or escrow account, or that she wrongfully transferred any funds out of the account.  Nor does it allege any intent or knowledge on the part of Ms. Carpanzano.  The only fact relating to Ms. Carpanzano alleged in the second amended complaint is that $46,608.94 of the funds transferred out of the account were used to purchase a Land Rover Range Rover that, at the time of the filing of the second amended complaint, was titled in Ms. Carpanzano's name.  Indeed, an examination of the complaint reveals that there is not "a sufficient basis in the pleadings" for the judgment of $2,050,000 in actual damages, let alone $50,000 in punitive damages, entered against Ms. Carpanzano. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (holding that "[t]here must be a sufficient basis in the pleadings for" the default judgment entered and that "[a] default judgment is unassailable on the merits but only so far as it is supported by *well-pleaded* allegations, assumed to be true" (emphasis in original)).  Scott also did not offer any evidence or arguments to implicate Ms. Carpanzano in the events in question—he focused his efforts on Mr. Carpanzano and Ms. Belcastro.

The defenses presented by Ms. Carpanzano to the district court assert that she had no knowledge of the details of her father's business transactions, she did not personally enter into any contracts with Scott or seek to defraud him, and—as made "clear from the Second Amended Complaint"—she had limited involvement in the facts of this case.  Given the lack of accusations against her, it is difficult to expect more from her in the way of denials.  In

No. 13-10096

other words, there is nothing specifically stated in the complaint as to which we would expect a denial or agreement. She has never denied receiving the Land Rover (nor does she seek its return in these proceedings). That is the only accusation against her.

When Ms. Carpanzano's defenses are considered in light of the second amended complaint, it is apparent she had little to no involvement in the facts of this case and that Scott failed to state a claim against her—itself a meritorious defense. *See, e.g.*, *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 58 n.4 (2d Cir. 2013) (unpublished) ("Because [the plaintiff] failed to state a claim against [the defendant, the defendant] also had a meritorious defense against [the plaintiff's] claims." (citation omitted)); *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183–84 (5th Cir. 1985) (finding that a defendant "obtusely" presented a meritorious defense in a forfeiture action where the complaint did not contain any allegations that she obtained the subject property with illegal proceeds and she proved that she was the owner of the property). Ms. Carpanzano's denial of involvement in her father's business and in the Scott transaction—in the absence of any indication in the complaint or anywhere else that she was involved—is sufficient to support a meritorious defense.

In addition, the underlying concern in determining whether a meritorious defense is presented is "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *In re OCA*, 551 F.3d at 373 (citation and internal quotation marks omitted). In Ms. Carpanzano's case, it is almost certain that the outcome after a full trial would not be a judgment of $2,050,000 in actual damages and $50,000 in punitive damages, as was achieved through the default judgment. Even if Scott were able to prove the entirety of the second amended complaint, we fail to see how it would justify a judgment of $2.1 million dollars against

15

Ms. Carpanzano: simply receiving a vehicle that was paid for with her father's ill-gotten gains does not support millions of dollars of liability. *See id.* (finding that the defendant presented a meritorious defense where, on the discrete facts of the case, there was "a possibility that the outcome after trial would not mirror the default judgment").

We thus conclude that Ms. Carpanzano has presented a meritorious defense. We therefore go on to consider how the remaining factors apply to Ms. Carpanzano.

## D. *Prejudice to Scott*

For this factor, the plaintiff must show that setting aside the default judgment will result in "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Lacy*, 227 F.3d at 293 (citation and internal quotation marks omitted). It is not enough that the plaintiff will be required to prove his case or that any potential recovery will be delayed. *Id.*

As a result of our ruling in this case, Scott will still have a judgment against the parties he alleged caused him the harm—Mr. Carpanzano and Ms. Belcastro. We can find nothing about setting aside the judgment only as to *Ms.* Carpanzano that prejudices Scott beyond the normal issues of litigating a case. Scott argued before the district court that setting aside the default judgments against *all three* of the Defendants would produce increased difficulties in discovery and provide the Defendants with further opportunities to hide or dispose of the funds that were transferred out of the escrow account. The district court agreed when assessing the Defendants as a group. Scott's brief does not address how he would be prejudiced if only the monetary default judgment against Ms. Carpanzano were set aside; he refers only to the harm that would ensue if the default judgment against *Mr.* Carpanzano was vacated. By the time the Defendants filed their motions to set aside the default judgments in this case, Scott had successfully seized the 2008 Land Rover

16

Range Rover pursuant to a constructive trust in his favor. Since the vehicle is in Scott's possession, setting aside the monetary default judgment against Ms. Carpanzano will not provide further opportunity for Ms. Carpanzano to hide or dispose of the vehicle.[6] Because Ms. Carpanzano has made no effort to set up a meritorious defense to or otherwise dispute the seizure of the Land Rover, we leave that portion of the district court's order intact.

We recognize that Ms. Carpanzano has failed to participate in post-judgment discovery and do not condone her behavior in this regard. We conclude that such conduct is best addressed by a sanctions or contempt order. It is unlikely that her punishment for failing to respond to discovery would equal the size of the monetary default judgment currently in place.[7]

## E. The Remaining Factors

The parties presented little argument on the remaining factors that may be considered, and the district court did not address them. *See Jenkens & Gilchrist*, 542 F.3d at 119 (stating a court need not consider all of the factors). The only one that we find clearly weighs either for or against vacating the default judgment against Ms. Carpanzano is the substantial-financial-loss factor. Undoubtedly, $2.1 million in damages militates strongly in favor of a trial on the merits. *See In re OCA, Inc.*, 551 F.3d at 374 (finding that a loss of several hundred thousand dollars weighed in favor of setting aside a default judgment); *Jenkens & Gilchrist*, 542 F.3d at 122 (finding that a loss of approximately $1.3 million militated in favor of setting aside a default judgment).

---

[6] Nor are there any allegations that Ms. Carpanzano took possession of any other proceeds of the escrow account, which she might be able to hide or dispose of if allowed more time.

[7] Indeed, the court did hold a contempt hearing and adjudicated these three defendant guilty of civil contempt, ordering them to appear for their depositions and respond to interrogatories, assessing attorneys' fees of $1650, and imposing a fine of $500 per day until compliance is reached. This appeal does not seek review of that order.

No. 13-10096

In sum, we affirm the district court in full as to Mr. Carpanzano and Ms. Belcastro, since the former willfully defaulted and the latter failed to present a meritorious defense.  As to Ms. Carpanzano, however, we conclude that the district court's order was at least a "slight abuse of discretion" as to the denial of relief from the monetary default judgment.  *See Jenkens & Gilchrist*, 542 F.3d at 118 ("Because of the seriousness of a default judgment, . . . even a slight abuse of discretion may justify reversal." (quoting *Lacy*, 227 F.3d at 292)).  We therefore vacate the order in this regard only.  *See In re OCA, Inc.*, 551 F.3d at 370–71 ("Unless it appears that no injustice results from the default, relief should be granted." (citation and internal quotation marks omitted)).

## IV.  Conclusion

We VACATE that portion of the district court's order that denies relief from the monetary portion of the default judgment entered against Carmela Carpanzano, AFFIRM the order in all other respects, and REMAND for further proceedings consistent with this opinion.