# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 19, 2019

Lyle W. Cayce
Clerk

No. 18-20655

A.P. MOLLER - MAERSK A/S, TRADING AS MAERSK LINE,

>  Plaintiff

v.

SAFEWATER LINES (I) PVT., LIMITED,

>  Defendant-Third Party Defendant - Appellant

v.

SAMRAT CONTAINER LINES, INCORPORATED,

>  Defendant-Third Party Plaintiff - Appellee

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-1726

---

Before STEWART, Chief Judge, and JONES and OWEN, Circuit Judges.

PER CURIAM:*

Plaintiff A.P. Moller-Maersk A/S, trading as Maersk Line, a non-participant in this appeal, is a Danish corporation specializing in

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20655

transportation of containerized ocean cargo. This lawsuit ensued after an improperly packaged shipment of hydrochloric acid ("HCL") from India to Houston resulted in a costly emergency clean-up response. Maersk claimed that Defendant-Appellant Safewater Lines (I) Pvt., Ltd. and Defendant-Appellee Samrat Container Lines, Inc. refused to take delivery of and abandoned the cargo after it arrived at the Port of Houston. Samrat filed a crossclaim for indemnification against Safewater. When Safewater did not respond, Samrat filed a request for entry of default, which the district court granted. Samrat later filed a motion for default judgment, which the district court also granted. Safewater filed a motion to vacate default judgment, which the district court denied along with a motion for reconsideration of that judgment. Safewater appealed.

I.

Maersk is a Danish corporation specializing in transportation of containerized ocean cargo. Safewater is an entity from India doing business in Texas as a non-vessel operating common carrier ("NVOCC"), freight forwarder, and logistics provider. Samrat is a New Jersey corporation doing business in Texas as an NVOCC, freight forwarder, and logistics provider, entering into service contracts and other contracts of carriage in the maritime industry. In this case, under the bill of lading, Safewater was the shipper and Samrat was the consignee.

The action arises from an ocean carriage from India to Houston of sealed shipping containers, loaded by a company other than Maersk, with improperly packaged, overfilled, and incorrectly stowed drums of HCL. After the containers arrived in Houston, it was discovered that HCL acid was leaking from the drums in the shipping containers, necessitating a costly emergency clean-up response. Maersk claimed that Safewater and Samrat refused to take delivery of and abandoned the cargo after it arrived at the Port of Houston.

No. 18-20655

II.

On June 13, 2013, Maersk filed its original complaint against Safewater, Samrat, and ATNI Inc.,[1] alleging negligence and breach of contract related to the ocean carriage's cargo of HCL from Pipav, India to Houston, Texas. In its amended complaint, Maersk added a cause of action for contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a). At the time of the second amended complaint, Maersk's damages amounted to $243,775.03.

On January 25, 2016, Samrat filed its crossclaim against Safewater. Samrat alleged it was not a party to any contract with Maersk; it did not authorize Maersk or Safewater to designate it as consignee of the HCL on the bill of lading; it played no role in the shipment of the HCL and did not act as a shipper or freight forwarder; and that if it was liable to Maersk for negligence, then Safewater was liable for all or part of the claim. Similarly, if Samrat was liable for breach of contract, Safewater was liable to it for all or part of the claim.

On February 8, 2016, Maersk filed a notice of dismissal as to Safewater based on their settlement agreement. On March 8, 2016, Samrat filed a request for entry of default against Safewater for failure to respond to its crossclaim. On December 8, 2016, while the briefing on Maersk's notice of voluntary dismissal was still pending, Samrat filed a proof of service of the crossclaim on Safewater supporting Hague Convention on Service Abroad, and a renewed Rule 55(a) request for entry of default against Safewater. Samrat's attachment reflected service on Safewater in India on August 11, 2016. On December 14, 2016, the district court issued an order granting entry of default against

---

[1] On February 20, 2015, the district court signed an agreed order of partial dismissal with prejudice, dismissing ATNI Inc.

3

Safewater. The court noted Samrat "has shown service was effected by the Hague Convention and Defendants' failure to respond to Samrat's crossclaim."

Four months after Safewater received notice of Samrat's crossclaim via Hague Service, on December 16, 2016, Samrat filed a motion for default judgment against Safewater. Samrat argued the conditions for a default had been met. Samrat contended that it was entitled to default judgment against Safewater for any damages awarded to Maersk against Samrat. As "[Maersk] only claims passive liability against Samrat based on Samrat's identification as consignee on the subject bill of lading ... [I]t is [Safewater], and not Samrat who could be actively liable to Maersk for its claims in this action. [Safewater] was the party who actually handled the subject cargo and interfaced directly with [Maersk], their contractual counterpart."

On December 19, 2016, Safewater's New Jersey counsel filed a motion and order for admission pro hac vice. On December 21, 2016, the district court admitted Safewater's New Jersey counsel pro hac vice. On the same day, the district court issued an order granting default judgment against Safewater on Samrat's crossclaim that "Defendants were responsible for loading, stowing, or discharging the cargo." The district court noted Safewater "failed to answer or respond" to Samrat's crossclaim.

On January 5, 2017, almost three and a half years after initial notice of the lawsuit by Maersk via Hague Service, Safewater made its first appearance in the lawsuit by filing a motion to vacate default judgment. Safewater argued in support of its lack of action in responding to Samrat's crossclaim that "it assumed that doing so would constitute formal entry into a matter that it rightfully believed was resolved [by its settlement with Maersk] and should be dismissed."

No. 18-20655

On August 23, 2017, the district court denied Safewater's motion to vacate.[2] On September 14, 2017, Safewater filed a memorandum in support of a Rule 60 motion for relief from judgment or order, and a motion for reconsideration of the court's August 23, 2017 order.

On September 4, 2018, the district court denied Safewater's Rule 60 motion to vacate and reconsideration of the district court's August 23, 2017 order.[3] On September 25, 2018, Safewater filed its notice of appeal.

III.

A.

We review a district court's denial of a motion to vacate a default judgment pursuant to Rule 60(b)(1) for abuse of discretion; however, "[b]ecause of the seriousness of a default judgment, . . . even a slight abuse of discretion may justify reversal." *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 118 (5th Cir. 2008) (quoting *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)) (internal quotation marks omitted); *see also Scott v. Carpanzano*, 556 F. App'x 288, 294 (5th Cir. 2014). We review the factual finding of whether a defendant willfully defaulted for clear error. *In re OCA, Inc.*, 551 F.3d 359, 367 (5th Cir. 2008) (citation omitted).

B.

Rule 55(c) provides that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b)(1) provides that a court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." Fed.

---

[2] On this same date, the district court granted Maersk's motion for summary judgment against Samrat. On September 4, 2018, the district court issued a final judgment against Samrat in the amount of $133,775.03, plus attorney's fees in the amount of $58,621.94 and costs of $554.53 along with pre- and post-judgment interest.

[3] On July 13, 2018, the matter was reassigned from Judge Harmon to Judge Hanen.

5

R. Civ. P. 60(b)(1). "In assessing a motion to vacate a default judgment, we have interpreted Rule 60(b)(1) as incorporating the Rule 55 "good cause" standard applicable to entries of default[.]" *In re OCA, Inc.*, 551 F.3d at 369 (citation omitted). In determining whether good cause exists to set aside a default judgment under Rule 60(b)(1), we examine the following factors: whether the defendant willfully defaulted, whether a meritorious defense is presented, and whether setting aside the default judgment would prejudice the plaintiff. *See Jenkens & Gilchrist*, 542 F.3d at 119 (citation omitted).

Of these factors, two can be determinative: a district court may refuse to set aside a default judgment if it finds either that the default was willful or that the defendant failed to present a meritorious defense. *See Jenkens & Gilchrist*, 542 F.3d at 119-20 (citation omitted). "A finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'" *Lacy*, 227 F.3d at 293 (citation omitted). "Rule 60(b) [should be] applied most liberally to judgments of default, since trial on the merits is to be favored over such a truncated proceeding." *In re OCA, Inc.*, 551 F.3d at 370 (citation and internal quotation marks omitted).

C.

Safewater contends that the district court erred in denying its Rule 60(a)[4] motion to vacate the default judgment where default was entered before seven days had passed between service of Samrat's motion for default judgment and the district court's grant of default judgment. Safewater adds that failure to give any notice of an application for default judgment raises

---

[4] Federal Rule of Civil Procedure 60(a) provides:

The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.

questions of due process, and therefore relief should be granted under Rule 60(b)(4) or (6).[5] Safewater claims to have been "actively preparing to oppose[] the Motion for [default judgment] when the Court inexplicably and without warning granted the Motion."

Safewater also argues that the district court erroneously denied its motion for reconsideration. The district court overlooked that Safewater's absence was not the result of any ill will or desire to ignore proceedings, but borne of a good faith belief that its involvement in the lawsuit would undermine its settlement with, and dismissal by, Maersk. The district court also overlooked Safewater's meritorious defense to Samrat's crossclaim. That is, contrary to Samrat's insistence that Samrat could not be sued because it was not a party to any contract with Maersk, Samrat was Safewater's agent under the terms of the bill of lading: "all U.S.-bound shipments were consigned to it, including hazardous and non-hazardous shipments, so Samrat became a party to a shipping contract as a consignee." Alternatively, Safewater asserts that we should remand the matter to the district court so that it may provide reasons for the denial of its motion for reconsideration.

Samrat makes three primary arguments: (1) because Safewater was already in default when its counsel moved to appear, notice under Federal Rule of Civil Procedure 5 of the motion for default judgment was not required; (2) the district court properly denied Safewater's motion to vacate default judgment because Safewater acted "willfully" and without "good cause;" and (3) the district court's denial of reconsideration without written reasons is allowed and proper.

---

[5] Federal Rule of Civil Procedure 60(b)(4) and (6) provides:

[T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding [if] . . . (4) the judgment is void [or] . . . (6) any other reason that justifies relief.

No. 18-20655

D.

*Notice and Hearing*

Safewater principally argues that the default judgment must be vacated for failure to provide and give the requisite seven-day notice. Rule 55(b)(2) provides: "If the party against whom a default judgment is sought has appeared personally or by representative, that party or representative must be served with written notice of the application [for default judgment] at least seven days before the hearing." Fed. R. Civ. P. 55(b)(2).[6]

Safewater's argument lacks merit for two reasons. First, Safewater's motion to vacate default judgment does not mention the seven-day notice period that forms the basis of this appeal. Safewater argued this for the first time in its motion for reconsideration. But motions for reconsideration "cannot be used to raise arguments which could, and should, have been made before the judgment issues." *Schiller v. Physicians Resource Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

Second, Safewater was already in default on December 14, 2016. Rule 5(a)(2) provides that "[n]o service is required on a party who is in default for failing to appear." Fed. R. Civ. P. 5(a)(2). Accordingly, Samrat's motion for default judgment, filed on December 16, 2016, was not required to be served on Safewater by either Samrat's counsel or the district court. Under Rule 5, Safewater's counsel's filing of a motion for admission pro hac vice only required him to be notified "of all subsequent proceedings and receive copies of all

---

[6] It is unclear from Safewater's brief whether they argue that a hearing was required before default judgment was granted. However, this argument was pressed by appellate counsel at oral argument. No hearing was required. Rule 55(b)(2) states that "the court *may* conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2) (emphasis added). None of these inquiries were necessary.

papers, even if he later chooses to default." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (citations omitted). Safewater's counsel filed his motion for admission pro hac vice on December 19, 2016. Importantly, there were no "subsequent proceedings" with respect to the granting of Samrat's default judgment—only the district court's issuance of the order granting default judgment on December 21, 2016. That order was served on Safewater's counsel via CM/ECF. Moreover, the history of Safewater's failure to respond to any filings throughout this lawsuit from its commencement on June 13, 2013, up until it filed the motion to vacate default judgment on January 5, 2017, undermines its claim that it would have responded to the motion for default judgment.

Safewater primarily relies on two Fifth Circuit cases. First, it cites to *Turner v. Salvatierra,* 580 F.2d. 199, 201 (5th Cir. 1978), for the proposition that "where a party has appeared and default judgment entered without notice . . . the judgment should be set aside under Rule 60(b)(6)." In *Turner*, the defendant had appeared by filing an answer and affirmative defenses in an earlier version of the case and had deposed prospective witnesses. *Id.* We held that the defendant had entered an appearance prior to the entry of default and acknowledged default judgment ". . . is only appropriate where there has been a clear record of delay or contumacious conduct." *Id.* (citations omitted). Here, Safewater did not file an answer or affirmative defense or appear prior to entry of default.

Safewater also cites *Charlton* which likewise is inapposite. *Charlton L. Davis & Co., P.C. v. Fedder Data Ctr, Inc.*, 556 F.2d 308, 309 (5th Cir. 1977). In *Charlton,* a misunderstanding between the defendant's president and defense counsel about who was to obtain local counsel resulted in the entry of a default. *Id.* at 308-309. Upon realizing the issue and prior to the plaintiff moving for default judgment, defense counsel contacted the court and "both

telephoned and wrote the plaintiff's attorney, indicating an intent to defend and requesting an extension of time because of a trial in another case." *Id.* at 309. We noted from those facts that the defendant "had a clear purpose to defend the suit." *Id.* Shortly after receiving notice from defendant's counsel, "the plaintiff sought to reap a tactical advantage from [defendant's] prior neglect by acquiring [a default judgment] . . ." *Id.* Commenting on this behavior, we said "[s]uch practice is what Rule 55 was designed to prevent." *Id.*

Here, as reflected in the record, Samrat's counsel promptly notified Safewater's counsel of the crossclaim on January 25, 2016, almost a year before the entry of default and default judgment. In fact, Safewater conceded the point that "[it] had notice of the crossclaim." *See Scott*, 556 F. App'x at 292 ("The record demonstrates that [defendant] received notice sufficient to satisfy his right to due process. He was well aware of the pendency of the action against him . . ."). Safewater's counsel's prompt filing of a motion to appear only two days after the district court granted entry of default suggests Safewater's counsel was aware of events in the district court. Even then, Safewater did not file anything until January 5, 2017, fifteen days after default judgment was entered, when it filed a motion to vacate default judgment. The record contains no evidence of any extension request or reply by Safewater's counsel to Samrat's counsel after notice of the entry of default. Consequently, the district court did not abuse its discretion in declining to set aside the default judgment.

*Willful Default*

A district court may refuse to set aside a default judgment if it finds the default was willful. *Jenkens & Gilchrist*, 542 F.3d at 119-20. We have defined willfulness, explaining that "[a] willful default is an 'intentional failure' to respond to litigation." *Scott*, 556 F. App'x at 294 (citation omitted); *see also*,

*e.g.*, *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (defining willfulness as "an intentional failure of responsive pleadings") (citation and internal quotation marks omitted)).

Safewater claims it believed in good faith that if it did respond to the crossclaim it would place itself in a dispute that was resolved by its settlement with Maersk, which should have mooted the crossclaim. Safewater anticipated that the complaint would be dismissed."[7] *But see Sigma Delta, LLC v. George*, No. 07-5427, 2008 WL 449682, at *2 (E.D. La. 2008) ("[C]ourts have found that a proper crossclaim is not subject to dismissal simply because the original complaint is dismissed as to the defendant named in the crossclaim." (citing *Fairview Park Excavating Co. v. Al Monzo Constr. Co.*, 560 F.2d 1122, 1125 (3d Cir. 1977))). As the district court suggested, Safewater could have filed a motion to dismiss or for summary judgment of the crossclaim to test its mootness theory, but it deliberately elected to "not get involved." Safewater did not appear for the initial conference or the second conference before the magistrate judge, and did not respond to the original complaint, Maersk's first request for entry of default against Safewater, Maersk's amended complaint, Maersk's second amended complaint, Samrat's crossclaim, Maersk's notice of dismissal and Samrat's opposition to it, Samrat's motion for entry of default against Safewater, and Samrat's renewed request for entry of default judgment against Safewater.

The Federal Rules of Civil Procedure are clear about unanswered motions for entry of default and entry of default judgment: they must be responded to, especially as here, where the defending party has never

---

[7] Maersk filed its initial proposed order of partial dismissal (of Safewater) with prejudice on the same day Samrat filed its crossclaim against Safewater. However, the district court struck the proposed order from the record because it "was filed without a motion and without explanation, and because it [was] opposed by [] Samrat [], which ha[d] also filed a Cross-Claim against [] Safewater [] . . ."

responded to any pleadings or documents throughout the litigation. *See* Fed. R. Civ. P. 55(a). Otherwise, the district court in its discretion is likely to grant the harsh remedy of a default judgment. *See In re OCA, Inc.*, 551 F.3d at 370 (stating that we may hold a district court acted within its discretion in denying relief from a default judgment if the defendant willfully defaulted). The district court's finding that Safewater willfully defaulted is not clearly erroneous. No further inquiry is necessary. *Lacy*, 227 F.3d at 293.

*Motion for Reconsideration*

A motion for reconsideration "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Gonzalez v. Phila. Indem. Ins. Co.*, 663 F. App'x 302, 307 (5th Cir. 2016) (citation and internal quotation marks omitted). Safewater asserts that the district court, in denying the motion for reconsideration, demonstrated manifest error. For the reasons discussed, we disagree. The district court's order denying Safewater's motion to vacate is based on and supported by its factual findings and the record. The order denying Safewater's motion for reconsideration supports those findings. Safewater takes issue with the fact that the district court did not provide reasons for its reconsideration decision. However, a district court is not required to state findings or conclusions when deciding a Rule 60(b) motion or its reconsideration. *See* Fed. R. Civ. P. 52(a)(3); *see also Jenkens & Gilchrist*, 542 F.3d at 118. As such, the district court properly denied Safewater's motion for reconsideration.

## IV.

The district court's judgment is AFFIRMED.